SUPREME COURT. Kings General Term, October, 1851. *Morse, Barculo* and *Brown,* Justices.

## THE PEOPLE *vs.* MICHAEL JOHNSON.

Where on a trial for murder, it appeared that the prisoner and the deceased had been engaged in a fight or scuffle in the public highway, and the prisoner after knocking down the deceased, took from the stone wall a large stone and, with both hands, threw it upon the head of the deceased so as to break in his skull and cause his death, and the presiding judge charged the jury that if they believed the deceased came to his death by a blow from the stone thrown against him, the case was capable of being regarded as a case of murder, under the second subdivision of the section defining murder, the charge was held to be erroneous and a new trial was granted.

Where the facts of a case bring it within any of the degrees of manslaughter, it can not fall within any definition of murder.

Where death is feloniously caused in a cruel and unusual manner, and in the heat of passion, the character of the crime depends on the intent; if done without a design to effect death, it is manslaughter in the second degree; if done with premeditated design, it is murder under the first subdivision of the section defining murder. But if done in the heat of passion, it can not, whatever may have been the design, be classed under the second subdivision of the section defining murder.

Cases stated in illustration of the class supposed to be covered by the second subdivision of the section defining murder. Per BARCULO, J.

The prisoner was tried on an indictment for the murder of Daniel Kane, at the Westchester Oyer and Terminer, in November, 1850, Justice McCOUN, presiding.

The evidence showed that the prisoner and Kane on the fourth day of July, 1850, while both were intoxicated, were seen alone engaged in a fight or scuffle in the public highway; that the prisoner knocked Kane down and took, from the stone wall near by, a large stone, which he threw upon Kane's head with so much violence as to break in his skull and produce death.

The presiding judge, among other things, charged the jury that if they believed that Kane came to his death by a blow from the stone thrown against him, the case was capable of being regarded as a case of murder under the second subdivi-

sion of the section of the statute defining murder, to which portion of the charge the prisoner by his counsel excepted.

The presiding judge also charged the jury that the said second subdivision was applicable to a case where one man has overpowered another, and then proceeds to do an act imminently dangerous to that other, and evincing a depraved mind, regardless of human life, although without premeditated design to effect the death of that other, and although that act was dangerous only to the person killed, to which the prisoner by his counsel also excepted.

The jury found the prisoner guilty and the cause was removed into this court by certiorari.

*F. Larkin*, for the defendant.

I. The evidence in this case, at most, makes out but a case of manslaughter in the second degree. (2 *R. S.* 3d ed. 750, § 10. 12; *Revisers' preliminary note, Manslaughter;* 3 *R. S.* 2d ed, 811, *and also their note to* § 10 *of manslaughter.*)

II. The judge erred in charging the jury, that if " they believed that Kane came to his death by a blow from the stone thrown against him, the case was capable of being regarded as a case of murder under the second subdivision of the section of the statute defining murder." In order to bring the prisoner under this subdivision of the statute, the act of killing must have been dangerous to others, besides the person killed. This subdivision of the section is not applicable to the case of the prisoner, but was enacted to reach another class of cases. (2 *R. S.* 3d ed. 746, § 5; *Revisers' note to this section*, 3 *R. S.* 2d ed. 809 [3] *Foster*, 256, id. 261: 1 *Hale*, 475; 4 *Black. Com.* 200; 1 *Hawk, ch.* 29, § 12; *id. ch.* 31. § 61; 1 *East*, 231, § 18; *The People* v. *White*, 24 *Wend.* 520; *The People* v. *Enoch*, 13 *Wend.* 159; *Barbour Cr. L.* 27.)

III. This part of the judge's charge was too restricted; it narrowed down the inquiry of the jury to the simple fact whether Kane came to his death by a blow from the stone thrown against him," and if they believed that it was murder under the second subdivision of the section defining murder. This subdivision

intends the jury shall find other facts besides the mere act of killing: they must find that the act was imminently dangerous to others, *evincing a depraved mind regardless of human life* (2 *R. S.* 3*d ed.* 746, § 5; *Hanford* v. *Mitchell,* 4 *Hill,* 271.)

IV. The judge erred in charging the jury, that they could find the prisoner guilty under the second subdivision of the section defining murder, without premeditated design. In order to constitute murder under that second subdivision of the statute, there must be a *general* premeditated design or malice aforethought, as distinguished " from a premeditated design to effect the death of the person killed or of any human being." (2 *R S.* 3*d ed.* 746, § 5; *East,* 231; 1 *Hale,* 476; 4 *Black. Com.* 300; 1 *Hawk. ch.* 27, § 12; *id. Ch.* 31, § 61; *Foster,* 261; *the Revisers' note to* § 10, *of Manslaughter.*)

*E. Wells* (Dist. Att'y), for the People.

I. The judge correctly remarked " that if the jury believed that Kane came to his death by a blow from the stone thrown against him, the case was capable of being regarded as a case of murder under the second subdision of the statute defining murder."

The facts being admitted as found, it is for the court to define their legal character and effect , and to decide whether in point of law they constitute the crime of murder, under this branch of the statute. (*Oneby's case,* 2*d Ld. Raym.* 1493; 2 *Strange's Rep.* 773; *Foster Cr. Law,* 255, 256; 2 *R. S.* 746, § 5 *sub.* 2, 3 *ed.*)

II. The second and third exceptions to the judge's charge, are substantially the same matters and may be considered together.

It is not necessary that premeditated design to take life should exist nor that the act producing the death should endanger any other than the person killed, in order to constitute murder under the second subdivision of § 5 of the statute; *provided* the act be such as is immediately dangerous to the person killed, and evinces a depraved mind regardless of human life. 1. The case of murder with *premeditated design,* is embraced in the

first branch of the section, and is excluded from the second branch, or at most is rendered immaterial. The latter branch was intended to include the cases at common law, of murder with implied malice, as distinguished from those committed with a settled determination and formed design. (2 *R. S.* 746, § 5; 4 *Black. Com.* 199; *Wharton's Crim. Law,* 225–6, *citing U. S. v. Cornell,* 2 *Mason Rep.* 91; *Foster Cr. Law,* 256–7; 1 *East P. C.* 214, 215; *Revisers' Notes, vol.* 4, *p.* 3, *of this act;* 1 *Hale P. C.* 449, *note* 2, *Am. ed.* 1847; 1 *Russell on Cr.* 483, *ed. of* 1841; *White's case,* 24 *Wend.* 581, *per Wager, Senator; Rector's case,* 19 *Wend.* 606–7.) 2. It is not necessary that the act of killing should endanger any other than the person killed, to make it murder under this subdivision of the statute. A different construction would exclude all the cases of murder at common law, with *implied malice* (and where the person killing was not engaged in the commission of a felony) from the grade of murder under our statute. Such is manifestly not the intention of the law. (*Revisers' Notes,* 4 *vol. p.* 3 *of this act, note;* 2 *R. S.* 875, § 11; *People* v. *White,* 24 *Wend.* 534, *per Walworth, J.*)

III. This case as it stands on the evidence disclosed in the bill of exceptions, does not properly fall under the head of manslaughter in the second degree, as defined by the statute.

The killing being proved, it is presumed by the law to be murder, and the circumstances which would reduce it to the milder degree of manslaughter, must be affirmatively shown by the prisoner. No such evidence appears in this case. (2 *R. S.* 750, § 10, 3*d ed.; Foster,* 255, *citing* 2 *Ld. Raym.* 1993; *Stra.* 773; 1 *East P. C.* 224, § 12; *Foster,* 255.)

*By the Court,* BARCULO, J., — We think the learned justice who presided at the Oyer and Terminer erred in charging the jury that if they believed " that Kane came to his death by a blow from the stone thrown against him, the case was capable of being regarded as a case of murder under the 2d subdivision of the section of the statute defining murder." He was probably led into the mistake by the remarks of the

The People *v.* Johnson.

chancellor in the case of *The People* v. *Enoch*, 13 *Wend.* 159, and of Justice Bronson in *The* v. *People Rector*, 19 *Wend.* 606. It would be with extreme reluctance that we could be constrained to dissent from the reasoning of those eminent jurists. But we think that our decision can stand consistent with those authorities, when it is considered that the ingredient of *passion*, which did not exist in those cases, is the controlling and distinguishing feature of the present case; and as the life of a human being is involved in the decision, we will proceed briefly to state the grounds of our conclusion that the jury may have been misled by the remarks of the learned justice at the Oyer and Terminer.

It is quite obvious that the revisers in the first chapter relating to " crimes and their punishment," intended to present a perfect system in which every grade of homicide should be distinctly and accurately classed. They state in their notes that, " It has been supposed that there was nothing so much wanted in the criminal law, as a settled line of distinction between murder and manslaughter which are now so nearly connected, and run into each other so much, that courts and juries often mistake, and a lamentable uncertainty prevails, which operates as well to screen the guilty as to expose the innocent." This evil they have remedied by a careful and judicious classification, so complete and perfect, that upon an ascertained state of facts, every homicide can be reduced to its appropriate degrees, and while it falls clearly within one class can not be brought within any other. The authors of this statute, unlike some modern law givers, understood the precise force and effect of the language used; and as a skillful surveyor makes his work meet so that his map covers the whole ground, neither more nor less, so they have included in their system every species of homicide known to the law, each degree standing by itself and occupying its own peculiar ground.

This principle, we apprehend, has not always been kept in view, even by our courts, in giving construction to some of the sections. It seems to have been supposed in some of the cases that, upon a certain state of facts, a case might fall indiffer-

ently within two or more degrees of homicide. We suppose that this can never happen — that if the facts bring the case within any degree of manslaughter it can not also fall within any definition of murder. And if a case should arise which should seem to run into the two offences, the true rule of construction requires us to place it under the head of manslaughter. This principle we deduce from the statute itself. It commences by declaring that the killing of a human being without authority of law " is either murder, manslaughter or excusable or justifiable homicide according to the facts and circumstances of each case." " Such killing, *unless it be manslaughter or excusable or justifiable homicide, as hereinafter provided,* shall be murder in the following cases:

1. When perpetrated from a premeditated design to effect the death of the person killed or of any human being;

2. When perpetrated by any act *imminently* dangerous to others, and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual;

3. When perpetrated without any design to effect death by a person engaged in the commission of a felony."

Thus it appears that by the terms of the statute, the killing of a human being in three specified cases is murder, *unless* it falls within some of the inferior classes of homicide; from which we deduce the inference that if a case comes within any degree of manslaughter, it can not be deemed murder, although it is accompanied by some of the circumstances which make up the latter crime.

Now, in the case before us, the prominent and undisputed facts show, that the prisoner and Kane, both intoxicated, on the 4th of July last, were seen alone engaged in a scuffle or fight, in the public highway; that the prisoner knocked Kane down, and stepped to the stone wall and took from it a large stone and raised it with both hands and threw it upon Kane's head, with such force as to crush his skull and produce his death.

The first idea which arises from this statement of facts to my mind is, that this was the killing of a human being *in a cruel*

*and unusual manner*; and that there is some probability that it was done *in a heat of passion.* If this be so, then the character of the crime depends upon the *intent.* If it was done " without a design to effect death," it is plainly and clearly manslaughter in the second degree within the 10th section of title II. If, however, it was done with " premeditated design," it is murder under the first subdivision above cited of sec. 5 of title I. But it can not, whatever may have been the design, be classed under the second subdivision of that section, if it was done in *a heat of passion.* This last essential element upon which the case revolved between murder under the first subdivision, and manslaughter in the second degree seems to have been overlooked on the trial. The judge should have directed the attention of the jury to the tenth section of the act in relation to manslaughter, and instructed them that the prisoner should be convicted under that section, if they believed that the killing was in a heat of passion, and without a design to effect death; and that if it was done with premeditated design, whether formed at the time or before, he was guilty of murder under the first subdivision. Instead of this, the attention of the jury was directed particularly to the second subdivision and they were advised that the facts of the case authorized a conviction for murder under that section.

We suppose that an erroneous impression may thus have been produced upon the minds of the jury. We consider the second subdivision wholly inapplicable to a case where there is reason to believe that the killing was in the heat of passion, for such killing never was murder at the common law, and the revisers did not intend to increase the cases of murder. That subdivision is applicable to numerous cases of murder known to the common law, where malice was implied. It would apply to the case of a man shooting into a crowd, or throwing missiles from a house or wall into the public streets of a city, without regard to the lives of those who might be exposed. It may also apply to the case where but one person is exposed, and even where the blow is aimed at the person. This appears by the case of Rector, if the fatal blow was given *not* in the

The People *v.* Johnson.

heat of passion, which seems to have been assumed by the counsel and the court. So if the prisoner had found Kane sleeping by the stone wall and had taken the stone in mere wantonness and let it fall upon him without designing to kill, he would properly have been convicted of murder under the second subdivision. But the law has respect to the infirmity of human passion, and if this blow was the result of the excitement of a fight, it falls within another section. This construction preserves the analogies of the common law: for in the English courts it has been held that, when, after mutual blows between the prisoner and the deceased, the prisoner knocked down the deceased, and after he was upon the ground stamped upon his stomach and belly with great force, it was manslaughter only. (*Russ & Ry. C. C.* 166.)

The conviction must be reversed and the case remitted to the court of Oyer and Terminer in and for the county of Westchester, with directions to award a *venire de novo.*(*a*)

Conviction reversed.

(*a*) The doctrine of this decision is fully sustained in the case of the People v. Darry, decided by the court of appeals at March term 1854, in which the second subdivision of the section defining murder is held to be inapplicable to a case of personal combat between two persons, and by which the *dicta* holding a contrary doctrine are overruled.