The order of the Appellate Division should be affirmed.

WERNER, HISCOCK, COLLIN, CUDDEBACK, MILLER and CARDOZO, JJ., concur.

Order affirmed.

---

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* WILLIAM HEINEMAN, Appellant.

Crimes — manslaughter — trial — erroneous charge as to degree of manslaughter of which defendant might be convicted — erroneous comment upon fact that defendant was carrying a revolver under a legal permit.

1. Defendant was indicted for the crime of manslaughter in the first degree. Defendant shot and killed the decedent under circumstances which the jurors could have determined constituted manslaughter in the second degree. Upon a consideration of the case,

*held*, that the charge taken as a whole, and with what was previously said by the court, erroneously directed the minds of the jurors solely to manslaughter in the first degree, and practically took from their consideration the question whether the defendant might not have been guilty of some lower degree of crime.

2. The charge was prejudicial to defendant in that the court, commenting on the fact that defendant had a permit to carry a revolver and was actually carrying one at the time of the alleged offense, said this "might bear, however, and in only this way, upon the defendant being rather quick on the trigger himself to carry a pistol around with him that way. * * * Of course, he had a strict legal right to do so, but at the same time it might be taken into consideration, if you wish, bearing upon the question of whether or not this defendant was too quick and too handy with his revolver."

*People* v. *Heineman*, 157 App. Div. 522, reversed.

(Argued March 16, 1914; decided June 2, 1914.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 10, 1913, which affirmed a judgment of the Court of General Sessions of the Peace in the county of New York rendered upon a verdict convicting the defendant of the crime of manslaughter in the first degree.

The facts, so far as material, are stated in the opinion.

*Myer Nussbaum* for appellant. The charge of the trial judge was erroneous. (*People* v. *Hill*, 37 App. Div. 327; *People* v. *Wood*, 126 N. Y. 249; *Union Bank* v. *Mott*, 39 Barb. 180; *Green* v. *White*, 37 N. Y. 405; *Capron* v. *Thompson*, 86 N. Y. 418; *Bolte* v. *T. A. R. Co.*, 35 App. Div. 234; *Jackson* v. *Timmerman*, 12 Wend. 299; *Gardner* v. *Pickett*, 19 Wend. 186; *Lansing* v. *Russell*, 13 Barb. 520; *Smith* v. *Lehigh V. R. R. Co.*, 170 N. Y. 394.)

*Charles S. Whitman, District Attorney* (*Robert C. Taylor* of counsel), for respondent. The charge was full and eminently fair and error cannot be predicated thereon. (*People* v. *Lewis*, 7 N. Y. Cr. Rep. 140; 115 N. Y. 663; *People* v. *Patrick*, 182 N. Y. 131.)

CUDDEBACK, J. The defendant was indicted for the crime of manslaughter in the first degree. Section 1050 of the Penal Law defines that crime as follows: "Homicide is manslaughter in the first degree, when committed without a design to effect death: \* \* \* *In the heat of passion*, but in a cruel and unusual manner, or by means of a dangerous weapon."

The counsel for the defendant requested the court to charge the jury, "They must find heat of passion on the part of the defendant before they can convict him of the crime charged." The request was refused and the defendant excepted. To understand the full force of the court's ruling other features of the trial must be considered.

At the close of the evidence the defendant's counsel asked the court to direct a verdict of not guilty for the reason, among other things, "that the evidence contained nothing to show heat of passion, which is under the statute defining manslaughter a necessary incident to that crime." The motion was denied and the defendant's counsel then summed up to the jury.

After the defendant's counsel had concluded his address the court entered into a colloquy with him at considerable length and said: "It is not necessary that the manslaughter should always be accompanied by heat of passion. It may be something even greater still if there were no heat of passion. If there were premeditation and deliberation and the killing was intentional, why it would be murder. Although even if the People did prove more than they are entitled to prove under the indictment that would not invalidate the indictment, but the jury could not convict under any circumstances of more than manslaughter in the first degree. \* \* \* If there were no heat of passion, as you claim, and there is no evidence of it, it seems to me, of any great heat of passion, I cannot see any, but if you want to eliminate that part of it I thought I ought to call your attention to it in order that you might argue it or debate it with

me, because if there is no heat of passion, the reverse of that is premeditation and deliberation. * * * If you can show me any authorities on the point I should like to see them." There was much more to the same effect. The defendant's counsel excepted to the remarks of the court and moved for leave to withdraw a juror. The motion was denied, and to that ruling there was an exception.

In the charge in chief the court said: "If you find that this defendant without justification, whether he was in the heat of passion or in temper or not,—that doesn't make any difference,— shot either at Dooley with the intent to shoot him whether he had an intent to kill him or not, that would be manslaughter. If he had an intent to kill it would be murder but he is not indicted for murder. Even without the intent to kill him but having the intent to shoot him, it would be manslaughter in the first degree. * * * Your verdict in this case would be either guilty or not guilty. Guilty means manslaughter in the first degree and not guilty means just what it says. * * * Heat of passion is no element in this crime whatever."

The assistant district attorney said that in order to avoid any argument upon the subject he requested the court to charge that there was sufficient evidence in the case from which heat of passion might be inferred, and that it was not necessary for him to show technical proof of heat of passion. The judge denied the request and said he really did not see that heat of passion had anything to do with the case. To this the defendant's counsel excepted.

The court's final word to the jury was: "No motive is necessary. No heat of passion is necessary in order to constitute the crime of manslaughter. Heat of passion would bring it to murder in the second degree if there was an attempt to kill. He is not on trial for that. Now, gentlemen, your verdict will either be guilty or not guilty and then your functions have ceased."

The charge taken as a whole, and with what was previously said by the court, directed the minds of the jurors solely to manslaughter in the first degree. The court practically took from their consideration the question whether the defendant might not have been guilty of some lower degree of crime.

In my judgment the defendant under the evidence might have been convicted of manslaughter in the second degree. Section 1049 of the Penal Law says: "In a case other than one of those specified in sections 1044, 1046 and 1047, homicide, not being justifiable or excusable, is manslaughter." The sections referred to are those defining murder in the first and second degrees.

Manslaughter in its two degrees is defined in sections 1050 and 1052. The last subdivision of section 1052 is an omnibus clause and includes all offenses not defined in the preceding subdivisions of the section or in section 1050. The language of the subdivision is: "Homicide is manslaughter in the second degree, when committed without a design to effect death: * * * *By any act, procurement or culpable negligence of any person, which, according to the provisions of this article, does not constitute the crime of murder in the first or second degree, nor manslaughter in the first degree.*"

It appeared upon the trial that the killing occurred at about half-past nine o'clock in the evening on January 1st, 1910, in front of 167 West 145th street, in New York city. The defendant, a man of good reputation thirty-four years old and married, was going to his home at 151 West 145th street. The defendant had a permit to carry a revolver, and at the time had a revolver in his coat pocket. The place was not brilliantly lighted but there was sufficient light to see what was going on.

The deceased, Dooley, was seventeen years old, a larger and heavier man than the defendant. He was slightly intoxicated and was "skylarking" with some boys around 167 West 145th street, when the defendant came

along. Dooley bumped into the defendant with considerable violence. The two clinched and went to the ground with Dooley on top. One of Dooley's friends, a man named O'Brien, pulled Dooley off the defendant and held him in an endeavor to stop the fight. The defendant got up and drew his revolver. He was about six or eight feet from Dooley and was backing away. O'Brien said to the defendant, " For God's sake, will you leave," or something like that. Dooley broke loose from O'Brien. and rushed toward the defendant. Then the defendant fired the fatal shot. The period of time during which the defendant continued to point the revolver at Dooley before the shooting was while "you would count ten easily." Some of the People's witnesses say that the defendant drew his revolver when he first came in collision with Dooley. The defendant, on his part, testified that he believed the assault on him was an attempt at robbery, that there had been many "holdups" in the neighborhood and that he fired the revolver as he lay upon the ground, not aiming at anybody.

It was for the jury not the judge to weigh the evidence. . The jurors certainly could have determined that the defendant was guilty of manslaughter in the second degree within the definition given of that crime. They might have found that the facts proved against the defendant did not make out a case of felonious homicide within any of the precise definitions contained in the Penal Law and, therefore, that he was guilty under the omnibus clause of section 1050. Or they might even have accepted the defendant's statement that he shot not aiming at anybody and found that he was " culpably negligent" in discharging the revolver. (*People* v. *McCarthy*, 47 Hun, 491; 110 N. Y. 309.)

The court's instructions, however, did not leave the jury free to convict of the lesser crime. In giving such instructions the court committed serious error, and I think the exceptions which I have pointed out are sufficient to

raise the question here. The defendant was found guilty of manslaughter in the first degree and was sentenced to imprisonment for not less than ten nor more than twenty years.

In another respect the charge was prejudicial to the defendant. The court commented on the fact that the defendant had a permit to carry a revolver and was actually carrying one at the time of the alleged offense. The court charged that the defendant had a legal right to carry the weapon, but at the same time said the jury might take into consideration whether, notwithstanding his permit, the defendant should have carried the revolver on such an occasion, and continued: " It was an opportunity, however, an opportunity to use it maybe on a very slight provocation. It would not bear directly upon this crime, either one way or the other. It might bear, however, and in only this way, *upon the defendant being rather quick on the trigger himself to carry a pistol around with him that way.* * * * Of course, he had a strict legal right to do so, but at the same time it might be taken into consideration, if you wish, bearing upon the question of whether or not this *defendant was too quick and too handy with his revolver.*" To this charge the defendant's counsel excepted.

It is the duty of this court under section 542 of the Code of Criminal Procedure to give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties. It cannot be said that the errors committed in this case did not affect the substantial rights of the defendant.

The judgment of conviction should be reversed and a new trial ordered.

HISCOCK, CHASE and MILLER, JJ., concur; WILLARD BARTLETT, Ch. J., concurs in result; CARDOZO, J., dissents.

Judgment of conviction reversed, etc.