THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* STELLA MARSHALL, Appellant, et al., Defendants.

First Department, May 12, 1953.

*Sidney E. Friedman* (*Martin S. Friedman* with him on the brief), for appellant.

*John B. Lee* of counsel (*Herman J. Fliederblum* with him on the brief; *George B. De Luca, District Attorney*), for respondent.

BERGAN, J. The proof in support of the charge that the defendant-appellant committed abortion is clearly presented and wholly uncontradicted in the record.

The testimony of the woman subjected to the abortion was that after paying $60 to the codefendant Benjamin, who was also convicted but does not appeal, she was taken by that defendant to appellant Marshall's premises and a tube was inserted by appellant in the vagina.

The tube was later removed at a hospital. The patient was acutely ill when she reached the hospital, was bleeding from the vagina, and was in shock; the medical evidence is that she was then suffering from " an incomplete infected abortion ".

Against the background of this strongly established case we examine and evaluate the procedural errors on the trial of which appellant complains.

In reading into the record a question and answer statement made by the codefendant Benjamin, a question was read by the stenographer-witness called to prove the statement, as to " How " Benjamin found out that appellant " did this kind of thing ". The answer was that " It was from somebody quite a while ago ".

This answer, however, must be read in the context of the immediately preceding question, which was whether the codefendant Benjamin had " brought other women up to Mrs. Marshall's ", to which a categorical denial was made.

Upon the answer that " It was from somebody quite a while ago " being read, appellant moved for a mistrial, which the court denied with a direction that " The jury will disregard that last statement ".

At the end of the People's case appellant again brought up this subject by motion addressed to the record in moving to strike out all conversations of the codefendant Benjamin not in appellant's presence, and for a direction to the jury that

any such testimony and " the statement made by " defendant Benjamin would be only applicable to the codefendant's case and not binding on appellant. The court reserved decision on this part of the motion and the case was immediately closed.

The subject of the effect of the codefendant's statement thus was again raised by appellant at the end of the case, although the court had previously, and contemporaneously with the objectionable matter having been read into the record, instructed the jury to disregard it.

Before it charged the jury, the court reread the challenged part of the Benjamin statement and told the jury " completely and absolutely " to " disregard it ". The Judge then polled the jury and asked each one if he would disregard " all the testimony in this case that has been ordered stricken from the record ". Each juror gave affirmative assurance.

We attempt first to see what the effect would be of the admission of the matter complained of had it been read without objection or comment by the court. In this case there had been direct and first hand proof of unskilled abortion resulting in acute illness. The question how the accomplice came " to find out " that appellant " did this kind of thing " is peripheral to the problem faced by the jury whether she committed the abortion charged.

The enigmatic answer that " It was from somebody quite a while ago " could scarcely be regarded as prejudicial since the jury had to assume that if the accomplice took money in this case to bring the pregnant woman to appellant for abortion, some fact or information germane to that subject had necessarily brought the codefendants together at some previous time and place.

And the previous answer in the statement, closely coupled in sequence, and contextual to the answer complained of, denying that the codefendant had ever brought " other women " to appellant, helped rather than hurt appellant's case.

When the two questions are seen together and when the record as a whole is looked at, one is not led necessarily to feel that the District Attorney was insidious in letting the stenographer-witness read without interruption or deletion the question and answer complained of.

No criminal trial can display a procedurally flawless record, and the Judge here did what good sense required by immediately striking out the matter complained of. The exception then taken by appellant fully protected her; but by the motions at the end of the case she further labored and re-emphasized

the same point, which defense strategy was closely followed by the polling of the jury by the Judge to be sure that the weight of his instructions was not missed.

His method of getting individual assurance from the jurors was unusual, but in part it resulted from the procedural course adopted by appellant at the close of the case; and while what the Judge said when the jury was polled emphasized unduly the specific questions and answers, it also emphasized a thing helpful in turn to appellant, that the jury were to disregard " all the testimony in this case that has been ordered stricken " out.

Thus we think that testimony of no great importance in the first place did not grow greatly in stature as the case proceeded and did not, on this record, have significant weight in the result.

It is argued that the charge did not fairly instruct the jury on the effect of the failure of appellant to testify (Code Crim. Pro., § 393). The Judge charged this fully in the words and in the spirit of the statute; he said that the " Failure of a defendant to take the stand creates no presumption against that defendant ", and that such a defendant is not " required to prove his innocence."

Later in the charge, and in the course of dealing with another subject, the court told the jury that since defendants did not take the stand " their character is not in issue " and " you have no right * * * to consider the character of the defendants on trial before you." The Judge perhaps had in mind the absence in this record of proof of good character; but whatever he had in mind, his withdrawal from the consideration of the jury of the character of appellant was not harmful in any substantial sense, since character was not to be considered under his instructions. The charge, viewed as a whole, fully presented the issue to the jury, and the other errors complained of are not significant.

It is, of course, possible to find cases, and some of them are cited here, where errors which bear a similarity to those complained of have resulted in a direction on appeal that there be a new trial.

A good example is *People* v. *Geib* (265 App. Div. 395), also an abortion case. The question complained of there was quite similar in text to the one considered here. The complainant in a series of questions by the District Attorney, to which successive objection had been taken by the defendant, said she had gone to the defendant because she had " heard about " her " before ".

The court was of view that the record there presented " a close case ". The effect of an error upon the result, or upon the fairness of the trial as a whole, is a prime consideration upon review of a criminal conviction. It is true enough that in external circumstance there is similarity in the questions pursued in that case and the questions read here; but it could scarcely be argued that every judgment in a criminal case in which such a question be asked would have to be reversed without regard to what the Judge did about it or to its weight in the final result.

In the end this becomes a matter of the judgment of the court which reviews the case on the effect of the error, and there are no entirely precise specifications to guide the formulation of that judgment in detail. Sometimes errors in series mount to a magnitude which seems fairly to warrant retrial; sometimes a single error of magnitude is enough. Not only was the case considered by the court in *People* v. *Geib* (*supra*) to be a close one, but there were other errors in the trial which the court regarded in totality as sufficient to warrant reversal.

It is usual to treat incompetent evidence as " merely cumulative " when the case is otherwise clear and convincing (*People* v. *Vacarro,* 288 N. Y. 170, 172, FINCH, J.). Where the proof of guilt " is complete " an admonition of the Trial Judge to the jury in his charge to disregard objectionable evidence has been regarded as sufficient, even though the motion to strike out had not been granted and the District Attorney had used the material in argument on summation (*People* v. *Pacelli,* 251 N. Y. 66).

What is " merely cumulative " when a whole record is examined, and what kind of proof of guilt " is complete " depend on an experienced and mature judicial appraisal. It would be hard to demonstrate, we think, that the error of admission of evidence complained of would have " irretrievably prejudiced " the rights of appellant in the sense that that term was used in *People* v: *Robinson* (273 N. Y. 438, 445).

The cases on improper instructions to the jury on the question of the failure of defendant to testify, cited by appellant, and of which *People* v. *Manning* (278 N. Y. 40) and *People* v. *Forte* (277 N. Y. 440) may be taken as examples, go much beyond anything to be complained of in the record before us.

We are of opinion that the errors assigned do not reach that level of significance in their effect upon the result which would warrant a reversal.

The judgment should be affirmed.

COHN, J. (concurring). While I agree with the views expressed by the Presiding Justice in his dissenting opinion as to error in the initial rulings of the Trial Judge, I believe that later instructions to the jury cured the harm. (*People* v. *Leyra,* 304 N. Y. 468, 471.) The court carefully admonished the jury to completely disregard the objectionable statement contained in the confession of Benjamin, and to consider such confession, with the questionable portion stricken, as binding only upon the defendant who made it. It will be presumed that the jurors obeyed the instructions. (*People* v. *Wilson,* 141 N. Y. 185, 191; *People* v. *Warder,* 231 App. Div. 215, 219.) In view of the other testimony in this case, the court's rulings could scarcely have operated to the prejudice of appellant.

Accordingly, I concur and vote to affirm.

PECK, P. J. (dissenting). Appellant Marshall and the codefendant Benjamin were tried together and convicted of the crime of abortion. The testimony of the woman aborted was that she was taken by a friend to the defendant Benjamin, who received payment and then took her to the home of the defendant Marshall, who performed the abortion. The friend testified to taking the woman to the home of Benjamin, to witnessing the payment there, and that Benjamin and the woman left the house and were gone for about half an hour. She did not know where they went. A detective testified that the defendant Benjamin admitted taking the young woman to Mrs. Marshall's apartment but that Mrs. Marshall had denied knowing or ever seeing the young woman or participating in any abortion. The final witness was a stenographer in the District Attorney's office who testified to the contents of a statement taken from the defendant Benjamin, in which she acknowledged receiving a payment and taking the young woman to the house of Mrs. Marshall and paying Mrs. Marshall who performed the abortion. Neither defendant took the stand.

Several errors are assigned by appellant's counsel with respect to the rulings and charge of the trial court. The crucial rulings were made in connection with the reading by the stenographer of the statement of the defendant Benjamin. When the stenographer started to read the statement upon the direct examination of the District Attorney, counsel for appellant objected to the admission of the statement against his client. The objection was overruled and an exception taken. Counsel then requested the court to charge the jury that whatever statement was made by Mrs. Benjamin to the District Attorney was

binding upon that defendant alone. The request was denied, the court stating that it would instruct the jury at the conclusion of the case as to the applicable law.

The stenographer then proceeded to read the Benjamin statement taken by the District Attorney. The statement contained the following questions and answers which were repeated by the witness:

· " Question: Have you brought other women up to Mrs. Marshall's? Answer: No.

" Question: This was the first time? Answer: Yes.

" Question: How did you come to find out that she did this kind of thing? Answer: It was from somebody quite a while ago."

An objection interposed at this point was sustained, but a motion for a mistrial denied, with a direction to the jury to disregard the last statement.

At the conclusion of the trial the court recalled to the jury's mind this objectionable matter and his admonition to disregard it, and by poll took the statement of each juror that he would disregard such testimony. To this procedure counsel for appellant objected upon the ground that it " worsens the situation which never should have existed in the first place."

In the course of the charge the court properly but belatedly charged the jury that the entire statement taken from the defendant Benjamin was applicable only to that person and was not to be considered against appellant.

While we might not regard the failure of the court to give this instruction when the statement was received as reversible error alone, the court should have given the instruction at that time and its failure to do so added to the prejudice which appellant sustained by the reference to her reputation as an abortionist.

The statement of the defendant Benjamin was most damaging as against both defendants and it was of the utmost importance that its admissibility be clearly delineated, so that the jury would understand that the statement could not be considered against appellant. The jury should have been given that understanding contemporaneously with the receipt of the evidence so that in the very hearing of the evidence they would know the limit upon it and that it might not be considered against appellant. Reserving the instruction until after the evidence had sunk in and then asking the jury to excise it from consideration as to appellant was not psychologically the equivalent of the proper instruction at the proper time.

Of course, that part of the Benjamin statement as to how she learned that appellant "did this kind of thing" should never have been brought to the jury's attention. As was stated in *People* v. *Geib* (265 App. Div. 395, 396), "This testimony could have no other purpose than to show to the jury that defendant was reputed and spoken of as a person who performed abortions." Although, as the District Attorney points out, there were other errors noted by the Appellate Division in reversing the conviction in the *Geib* case, this particular error loomed large in that decision and looms large in our opinion in this case.

Whether an instruction to a jury, such as was given in this case to disregard the testimony, may fairly be regarded as correcting or counteracting the error depends upon the nature of the proof and the type of error committed (*People* v. *Carborano,* 301 N. Y. 39). As Judge FULD said in that case, "Nor can a court's instructions to jurors to dismiss from mind matters improperly brought to their attention always assure elimination of the harm already occasioned. * * * If it did, then the prosecution would be in a position to violate the rules of fair conduct with impunity, secure in the thought that the verdict, if one of guilt, would not be upset as long as the judge simply directed the jury to disregard what had occurred."

That observation is apposite to the present case. The highly objectionable matter did not pop into the case by inadvertence through an unexpected or casual statement of a witness. It was elicited by the District Attorney in pointed and private questioning of the defendant Benjamin and purposely brought before the jury by having the stenographer read the statement so taken. The District Attorney knew the contents of the statement and observance of rules with which he was fully familiar required omission of this part of the statement.

While the verdict in this case might likely have been the same in an unblemished trial, we are not able to disregard errors which impaired the fairness of the trial. The judgment should be reversed and a new trial ordered.

CALLAHAN, J., concurs with BERGAN, J.; COHN, J., concurs in result in opinion; PECK, P. J., dissents and votes to reverse and order a new trial, in opinion, in which GLENNON, J., concurs.

Judgment affirmed.