THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* McDONALD LEWIS, Appellant.

Third Department, July 2, 1953.

*Samuel Levy* for appellant.

*Emmett J. Lynch, District Attorney,* for respondent.

BERGAN, J. The indictment in a few words accuses defendant of manslaughter in the first degree. It charges that on January 14, 1951, in " the heat of passion " he shot and killed Alice Rose McKittrick with a revolver. It negatives justification or excuse for the described homicide.

Defendant was the owner of a rooming house and grill in Schenectady. The proof on the trial indicates he had been intimate with the deceased woman and the homicide occurred in an apartment in defendant's premises. The jury could readily have found that defendant and deceased had a dispute just before the shooting and that defendant fired five shots from a revolver. Four bullets had entered the body of deceased; one had missed her.

On the question of the number of shots; the use of the pistol by defendant to shoot the deceased; and the shooting itself as a cause of her death, the proof is very strong. This proof consists of an admission by defendant to the act of homicide made to police immediately thereafter; a full proof by the medical examiner to entry of bullets into the body as a cause of death; on physical production of the gun, the exploded chambers, and the recovery of some of the bullets from the body.

Indeed, when the record is considered as a whole, the homicide is admitted without dispute by defendant's own testimony on the trial in which he related in detail the shooting by him of the deceased, but justified it on his own fear of an attack by her.

Defendant's explanation of events, expressed with a pretty fair consistency both in his statement to the police immediately after the crime and in his testimony on the trial, was that the deceased made accusations of infidelity against defendant; told defendant several times she was going to kill him; and taking a small baseball bat in one hand and defendant's own straight razor in the other, started toward him. He was then, he said, lying on a bed and when the deceased got to a place in front of the foot of the bed defendant took a revolver from within a

dressing gown he wore and began shooting, continuing until he had fired five shots.

From this it is argued by appellant that the record would not have justified an affirmative finding by the jury on one element essential to the crime of manslaughter first degree, i.e., that it was committed in " the heat of passion ". If all the proof is taken in an aspect most favorable to the People, the argument proceeds, it might justify the finding of an unexcused homicide with a dangerous weapon, but not homicide in the heat of passion.

The conclusion is pressed on us from this reasoning that since heat of passion is a state of mind manifested by some physical action, there is no proof in this record to warrant the jury in finding this shooting was thus actuated. The only proof on either the actual state of mind of the defendant or on his actions from which his state of mind could be inferred, it is argued, is his own account of events and to the extent this shows a state of mind it shows fear, but that even if the jury rejected the fear there would still be no basis for finding the homicide was in the heat of passion whatever might be said of it. From this argument appellant suggests that the crime charged has not been proved.

The " in the heat of passion " language which the Legislature used in defining the crime of manslaughter first degree in one of its forms (Penal Law, § 1050, subd. 2) must be read with the contextual language describing types of homicide of greater magnitude in the same statute (art. 94). It is the " deliberate and premeditated design " to kill which makes out murder in the first degree in one of its forms. (§ 1044, subd. 1.) By long and consistent judicial definition juries were instructed that a homicide in the heat of passion was not to be deemed deliberate and premeditated in design.

The consistency of the pattern is to be observed as we descend the scale in severity. The " design " to cause the death, but the absence of deliberation and premeditation becomes murder in the second degree (§ 1046). The absence of all three, design, premeditation, and deliberation, but the presence of " heat of passion ", becomes one form of manslaughter first degree.

The words " in the heat of passion " do not necessarily require the manifestation of a violent rage. It is principally a state of mind in which there is an absence of design to cause death and an absence of a deliberate implementation of such a design. The words seem to us to be used in the sense of a sudden urge and in the sense of spontaneous action. The pattern

of legislative intent is to be seen by continuing down the scale of homicide to read, as one definition of manslaughter in the second degree, a homicide " in the heat of passion " but without the dangerous weapon (§ 1052, subd. 2). One by one the components which in the beginning went to define murder are seen to have been eliminated.

All this becomes somewhat clearer when one turns to the cases which have been addressed to the subject. In 1859 the Albany General Term had before it an appeal from a conviction had for murder in the first degree at the Oyer and Terminer for Albany County. (*Wilson* v. *People*, 4 Parker Cr. Rep. 619.) Defendant and deceased were canal men; they had had an argument over the movement of their respective canal boats at Waterford and the proof was that defendant had seized an ax or hatchet, striking the deceased on the head; that he fell into the river, and due to the effects of the blow he drowned although defendant tried to rescue him.

At Oyer and Terminer defendant was convicted of murder in the first degree, but the General Term reversed. The court addressed itself to the " heat of passion " provision of the statute and it regarded the instructions of the trial judge on the subject pursuant to which the jury had reached the higher form of homicide, as erroneous (pp. 646, 647).

The trial judge had charged that the " heat of passion " homicide meant a reciprocated quarrel in which the person killed is immediately concerned and " not all on one side ". But the General Term felt that the acts, and even the words alone, of the decedent could arouse the mind of the accused to the " heat of passion " which the jury could have considered in the facts of that case as warranting a lesser degree of homicide than murder. Thus it is to be seen that a quarrel between the accused and the deceased was not necessary to justify finding the homicide in the " heat of passion ". That it could be aroused by mere talk or irritation was the necessary result of the reversal at General Term.

In *People* v. *Risico* (191 App. Div. 355 [1920]), defendant was convicted of murder in the second degree, and in the charge to the jury the court defined manslaughter in the first degree, but omitted to include in his definition that it was committed " in the heat of passion ". The judgment was affirmed, and BLACK-MAR, J., was of opinion that the " heat of passion " expression was inserted in the statute " as the expression of a condition of mind which prevents the inference of an intent to kill from the

use of a dangerous weapon '' (p. 358). The omission in the charge was not felt to be harmful to defendant because it would have permitted in that case the finding of manslaughter, a lower degree of crime, without finding that the homicide was in the heat of passion.

That the heat of passion ingredient of manslaughter first degree must often rest on inferences to be drawn by the jury may be seen in such diverse circumstances as in *People* v. *Dillon* (142 App. Div. 64) where a policeman shot a youth when the deceased was telephoning to the police station to make a complaint; and in *People* v. *Johnson* (1 Parker Cr. Rep. 291) where deceased and defendant both engaged in a drunken 4th of July fight which ended when defendant struck and killed deceased with a large stone.

On the subject of defendant's state of mind in the case before us the jury did not have to accept as true defendant's own relation and evaluation of his own purpose and intent; either that he was defending his life with his pistol or that the killing was not '' in the heat of passion ''. The jury could reasonably have construed the undisputed physical events as proof of actuation in the heat of passion.

The firing of five shots where one would have been enough would suggest this. The firing of shots in close time relationship to events which the jury could find had been an argument between defendant and deceased would also suggest it. Annoyance of defendant at deceased's accusations which the jury could have found would suggest it. We think in interpreting these events the jury could say fairly that the homicide was '' in the heat of passion ''.

It is argued also on appeal that the verdict is against the weight of evidence on the question of defendant's acting in self-defense. A large amount of proof was adduced on previous assaults by the deceased upon the defendant. On one occasion he testified she hit him on the head with a picture and then with a shotgun; on another that she had thrown a bottle at him which he had '' ducked ''; on another that she had hit him on the head with a bottle. In August of 1950 he said she had attacked him '' with a knife ''. As to what defendant did then, he said, '' Well, I jumped out of the way ''.

While it is technically true that defendant in his own home did not have to run away when the decedent, razor and baseball bat in hand, started toward him, still the jury might consider on the question of the extent of his true fear as a justification

for the homicide that having previously successfully avoided being stabbed with the knife he could, without shooting a pistol, have avoided also the sweep of the razor. (Cf. *People* v. *Sullivan,* 7 N. Y. 396.)

And on the extent to which he used the gun in the shooting, a question germane to the jury's consideration of how far fear might have justified his force, the defendant when asked by his own counsel if he remembered " how many shots " he had fired after the first shot said blankly " I do not ". He had just testified in detail to hundreds of facts through fifty-one pages of a printed record of direct examination and he was still to testify to hundreds of other details.

The jury would be justified in taking this answer on a central fact in the case on his general credibility and especially on his asserted action in self-defense. His later admission on cross-examination in which, after saying that he had fired the gun and being asked if he did nothing else, he answered: " Nothing else. Kept on firing, that's all I did " is significant both on credibility and the claimed self-defense.

The charge was very lengthy, but as a whole it must be read, we think, as emphasizing the rights of the defendant and the necessity of the People to cross all the required barriers to establish his guilt and to justify a conviction. One point relating to the charge requires attention. The court referred several times to the pretrial statement made by the defendant as a " confession ". It is true that it is a technical error to characterize an explanatory or exculpatory statement by an accused as a " confession ". (*People* v. *Doria,* 280 App. Div. 1027.) But every error in a criminal case will not warrant a reversal. (*People* v. *Marshall,* 282 App. Div. 36.) The error must rise to a level where it can reasonably be evaluated as adversely affecting the result. In *People* v. *Doria* we regarded the question of guilt or innocence of the rape charged as closely balanced; we felt the error in the context of that record of sufficient gravity to warrant a new trial.

But it can scarcely be argued that every time a Judge in his charge calls a pretrial statement a " confession " there must be a reversal without regard to the course and direction of the record as a whole. Here the Judge gave rather careful attention to the limited value of the statement of the defendant; and the statement was very much like the testimony he ultimately gave. Beyond all that we do not regard this case as a close one. The crime was clearly and fully established; and the record is ample to sustain the verdict.

We think, however, that the maximum sentence imposed in this case was excessive. The sentence for manslaughter first degree is a term of not more than twenty years. On the conviction the court imposed the longest term possible on a first offender, ten to twenty years (§ 1051) and an additional term of from five to ten years because the crime was committed with a dangerous weapon (§ 1944), so that defendant was sentenced in all to fifteen to thirty years. For the purpose of exercising discretion in the matter of punishment, it might be thought, in the scheme of the statute, that the fact the crime was committed with a dangerous weapon was absorbed to some extent in the crime itself, since an integral element is that it must be committed with such a weapon. We do not hold the court without power to impose the sentence; we regard it merely as too severe in this case. Nothing in the previous record of defendant suggests a need for extraordinary severity.

He had never been convicted of a felony and the only previous conviction of any kind at any time shown was for an assault third degree in 1938 for which a fine of $100 was paid. The probation report shows defendant an active communicant of his church and the president of its board of trustees. The homicide was essentially a crime of passion for which, in the absence of a bad record, it seems to us better to impose a penalty below the maximum.

The judgment should be modified by reducing the sentence to an indeterminate term of from seven and one-half to fifteen years on the charge of manslaughter first degree and by imposing no additional punishment under section 1944 and as thus modified it should be affirmed.

Foster, P. J., Coon, Halpern and Imrie, JJ., concur.

Judgment modified, on the law and facts, by reducing the sentence to an indeterminate term of from seven and one-half to fifteen years on the charge of manslaughter first degree and by imposing no additional punishment under section 1944 and as thus modified, affirmed.