Nathan R. Sobel, J.
The defendant Lumetta, heretofore granted an inspection of the Grand Jury minutes, moves to dismiss the indictment charging him with manslaughter, first degree, and two counts of felonious assault, on the grounds that:
*96 1. The evidence before the Grand Jury is insufficient as a matter of weight to warrant the indictment.
2. The evidence 'before the Grand Jury is insufficient as a matter of law to warrant the indictment. Specifically, in this regard, the defendant contends that there is no proof, direct or circumstantial, of the essential element of “heat of passion” under the manslaughter count of the indictment.
3. That the indictment was found on illegal evidence adduced before the Grand Jury.
4. That the evidence before the Grand Jury is insufficient both as a matter of weight and as a matter of law to support the counts of felonious assault.
I. Motion to Dismiss on “Weight” oe Evidence Before a Grand Jury.
On the testimony before the Grand Jury, it is clear to me that if no other evidence was presented at the trial, it would be the duty of the court to dismiss the indictment at the close of the People’s case. Briefly stated, the evidence is as follows.
Lumetta was cut by the deceased with a jagged end of a broken bottle. One eyewitness testifies that Lumetta and his three companions chased his assailant a distance of 100 feet and there beat him with their fists and feet and a belt as a result of which beating he died. But another eyewitness for the People, closer to the scene, testifies that Lumetta remained where he had fallen, while the other three, also indicted, inflicted the wounds which caused death. Such a contradiction between the People’s only eyewitnesses would create in my opinion, a reasonable doubt as to defendant’s guilt solely on the weight of the evidence.
Under what circumstances is a court justified in dismissing an indictment for evidentiary insufficiency (weight) ? The appellate courts have not furnished us with many standards for making that determination.
Clearly, where there is no evidence the court must dismiss. In People v. Glen (173 N. Y. 395, 400 [1903]) the court stated: 1 ‘ But our courts have also always asserted and exercised the power to set aside indictments whenever it has been made to appear that they have been found without evidence, or upon illegal and incompetent testimony.” (Italics mine.) It may be noted however that the decision in Glen went the other way since the court found ample evidence to warrant the indictment.
In another appellate decision, the court ruled rather obliquely that proof before the Grand Jury need not be beyond a reasonable doubt. In People v. Bob (233 App. Div. 94, 96-97 [1931]) *97 the court stated: “ The People having established a prima facie case against the defendant, respondent, before the grand jury, the court was without power to dismiss the indictment upon the stated ground that the evidence before the grand jury did not ‘ show the defendant guilty * * * beyond a reasonable doubt.’ To reach such a conclusion the court assumed as true everything the defendant said, and acted as both judge and jury.”
But an examination of the evidence before the Grand Jury in the Bob case indicates that the evidence was more than ample to make out a prima facie case.
A better and much clearer guide is furnished by the decision in People v. Eckert (2 N Y 2d 126). But that case turned mainly on the legal value of circumstantial evidence before a Grand Jury. The court stated (p. 129): “Of course, an indictment which is based upon circumstantial evidence which does not possess the degree of certitude which the law requires as to those facts bearing upon the accused’s guilt must be dismissed * * * In this instance that determination was for the Grand Jury in its capacity as arbiter of credibility and of the weight to be given to the evidence (People v. Vaccarella, 257 App. Div. 461; People v. Bob, 233 App. Div. 94). That a trial jury may not convict on this evidence is not our concern. The Legislature has specifically relegated the question of whether a trial jury would return a conviction on this evidence to the judgment of the Grand Jury (Code Crim. Pro., § 251). On the record we cannot say the legal evidence was insufficient for the Grand Jury to make such a determination.” (Italics mine.)
The main issue whether the degree of proof required before the Grand Jury is the same as upon a trial, is dealt with specifically by Judge Bkeitel in a note (stated dicta) appended to his opinion in People v. Howell (3 A D 2d 153, affd. 3 N Y 2d 672). The note at page 161 reads: “ In the context of this case it is not necessary, therefore, to consider whether the degree of proof before a Grand Jury, as distinguished from proof of the several elements of the crime, must be the same as before a trial jury. But a caution is certainly suggested. A trial jury in a criminal case must be satisfied by the evidence beyond a reasonable doubt. A Grand Jury in order to return an indictment must have before it sufficient evidence to warrant a conviction, if not explained or uncontradicted. (People v. Bob, 233 App. Div. 94.) Obviously the test of nonexplanation or noncontradiction is not one that is submitted to a petit jury, even when the defendant rests on the People’s case. There is *98 a much higher standard required before the trial jury, presumably, even on motion made at the close of the prosecution. Thus, for example, testimony of a degraded, uncertain or confused person, containing, nevertheless, the elements of a crime, might sustain an indictment, on motion, where it would not meet the test, if that were all that were offered, to justify a trial verdict of guilty beyond a reasonable doubt. Would a court dismiss an indictment obtained on the testimony of an eight-year child concerning a sex crime committed on her, absent corroborative evidence of the identity of the offender? Hardly. (See People v. Ortiz, 80 Misc. 879; People v. Peary, 249 App. Div. 851; People v. Sexton, 187 N. Y. 495, 513, supra.) That the test applicable to circumstantial evidence should be applied differently with respect to Grand Jury evidence, see dissenting opinion by Bergan and Halpern, JJ., in People v. Leary (280 App. Div. 679, 686, revd. 305 N. Y. 793). On any view, however, whether evidence before a Grand Jury warrants a conviction, given some evidence of each of the elements of the crime, sometimes referred to as a prima facie case, it is now quite clear that such determination is one to be made exclusively by the Grand Jury. [Citing and quoting from People v. Eckert, supra.] ”
From all of the foregoing, it is clear that despite my opinion that the evidence is insufficient and would standing alone require my dismissing the indictment at the close of the People’s case, I am bound by the judgment of the Grand Jury as the sole arbiter of the credibility of the witnesses and of the weight to be given to the evidence. It is evidently the law that if there is any evidence at all to warrant the indictment, the court has no power to dismiss. This may result in injustice on occasion but on the whole it is a workable rule.
II. Motion to Dismiss on the Law. Failure oe Proof of “in the Heat of Passion ” as an Element of the Crime of Manslaughter.
The phrase “In the heat of passion” is included in the definition of both manslaughter, first degree (Penal Law, § 1050, subd. 2) and manslaughter in the second degree (Penal Law, § 1052, subd. 2).
The defendant contends that as to him, there is no proof in the evidence before the Grand Jury of this essential element of the crime of manslaughter. When there is no proof of an essential element of a crime, the indictment is insufficient in law.
Since the decision in People v. Peetz (7 N Y 2d 147) it is now definitely established that affirmative proof of “heat of pas *99 sion ” as an essential element of the crime of manslaughter is now required both before the Grand Jury and on the trial. (See, also, People v. Nicoll, 3 A D 2d 64; People v. Lewis, 282 App. Div. 267, 271; People v. Heineman, 211 N. Y. 475.)
The issue before me could be decided on the cited cases with little further comment. However, the precise meaning of the term “ heat of passion ” has been a puzzling problem to Trial Judges. For that reason further comment may be helpful.
It has always been clear that ‘ ‘ heat of passion ’ ’ may, upon a proper state of facts, be charged “exclusively” i.e., in a murder prosecution to negative the elements of premeditation and deliberation and intent to kill. It is now also clear that heat of passion must be charged ‘ ‘ inclusively ’ ’ i.e., affirmatively both on an indictment for manslaughter and on an indictment for murder if the defendant is entitled to a charge of homicide in all its degrees.
A. Exclusive Proof of Heat of Passion
“ Heat of Passion ” is a common-law term. Under the common law, affirmative proof of design or intention to kill i.e., “ actual malice ” was not always necessary. In some situations, malice was implied from the use of poison, or a deadly weapon or from the use of cruel or unusual means. Blackstone states the rule (4 Blackstone’s Comm., ch. 14, p. 201) that all homicide was ‘ ‘ malicious, and of course amounts to murder, unless * * * alleviated into manslaughter ’ ’. Under the common law, proof that the homicide was committed in the ‘ ‘ heat of passion” as a result of a sudden quarrel or upon impulse stirred by provocation, negatived the implication of malice, i.e., intent to kill and reduced the crime to manslaughter. (See note, Heat of Passion which will Mitigate or Reduce the Degree of Homicide, 5 L. R. A. [N. S.] 809.) This is still the rule in several States. Indeed in California it is made the rule by statute. (People v. Ross, 34 Cal. App. 2d 574; People v. Valentine, 28 Cal. 2d 121; People v. Borchers, 50 Cal. 2d 321; People v. Bridgehouse, 47 Cal. 2d 406.) Thus even where intent to kill exists, proof of heat of passion reduces the crime to manslaughter. (Incidentally the California decisions cited, particularly Valentine, supra, contain good definitions of the term “heat of passion”.) To the same effect, the new Homicide Act adopted in England in 1957 (5 & 6 Eliz. II, ch. 11), while not adopting the term ‘ ‘ heat of passion ’ ’ does define the “provocation” which will reduce intentional murder-to manslaughter. The definition (§ 3) is helpful: “ Where on a charge of murder there is evidence on which the jury can find that the *100 person charged was provoked (whether by things done or by things said or by both together) to lose his self-control, the question whether the provocation was enough to make a reasonable man do as he did shall be left to be determined by the jury. In determining that question the jury must take into account everything both done and said according to the effect which, in their opinion, it would have on a reasonable man. ’ ’
There is no dearth of decisions, old and new, in other jurisdictions defining the “heat of passion” which will reduce murder to manslaughter. (Johnson v. State, 129 Wis. 146; Maher v. People, 10 Mich. 212, 218; Brown v. State, 62 N. J. L. 666, 713; State v. Brown, 22 N. J. 405; Commonwealth v. Flax, 331 Pa. 145; Tarrence v. Comm., 265 S. W. 2d 40 [Ky.], cert. denied 348 U. S. 899; State v. Wilson, 98 Mo. 440; Zenou v. State, 4 Wis. 2d 655.)
But in our own State, there are only a few early decisions which mention the “ exclusive ” definition of the term. The only discussion at length is in Wilson v. People (4 Parker Cr. Rep. 619). (But see People v. Maine, 51 App. Div. 142; also, People v. Barberi, 149 N. Y. 256, concerning proof of heat of passion to disprove premeditation and deliberation, and People v. Lewis, supra, in which the “ exclusive ” meaning of the term is included in the definition.) This is probably due to our statutory provisions defining homicides.
Our earliest New York statutes followed the common law. Intent to kill was implied from the commission of certain kinds of homicides. But the Revised Statutes of 1829 established the present clear-cut distinction between murder (actual design to kill) and manslaughter (without design to kill). (But then as now, intent to kill was implied from the commission of acts ‘1 imminently dangerous ” or “by a person engaged in the commission of * * * a felony ’ ’. Penal Law, § 1044, subds. 2, 3.) In their notes to the homicide provisions of the Revised Statutes (1827), the Revisers reported: “It has been supposed that there was nothing so much wanted in the criminal law, as a settled line of distinction between murder and manslaughter, which are now so nearly connected, and run into each other so much * * *. The great principle upon which the section rests, is this, that to constitute murder, there should be an express design to take life ”.
Thus the stated purpose of the Revisers was to compel inquiry in each case into the actual state of the defendant’s mind. To assure that objective, murder statutes required proof of actual design to effect death and the manslaughter statutes *101 then as now contained the words ‘ ‘ without a design to effect death ’
As heretofore discussed, “heat of passion ” at common law served to negative intent to kill whether in fact such intent existed or not. The Revisers, in an abundance of caution, added to the definition of manslaughter the very common-law term which had served to negative intent to kill at common law. It was thus probably used in its exclusive sense.
The Revised Statutes of 1829 (part IV, ch. I, tit. II, § 10) read: “ § 10 The killing of a human being, without a design to effect death, in a heat of passion, but in a cruel and unusual manner ” etc. The Revisers were defining manslaughter as homicide without intent to kill. But also they included homicides in which under the common law intent to kill would be implied but in which proof of “ heat of passion ” would reduce or alleviate the crime into manslaughter.
That this was the intention of the Revisers is supported by the statutory plan.
(1) The phrase “ heat of passion ” was used only in connection with crimes committed in a “ cruel and unusual manner ’5 (§ 10), or by “any weapon” (§ 18). These are all circumstances which under the common law implied malice. The phrase was not used in connection with the other definitions of manslaughter.
(2) As the crime of manslaughter was then defined under the 1829 Statute and as it is now defined under the Penal Law, one, who without design to effect death, coolly and contemplatively shoots another with a dangerous weapon, can only be found guilty of the lowest degree of manslaughter under the omnibus clause (Rev. Stat. of N. Y., part IV, ch. I, tit. II, § 19; Penal Law, §' 1052, subd. 3). But one who commits the same acts in the heat of passion is guilty of the highest degree of manslaughter. Surely the Revisers did not intend that the more culpable crime should be dealt with less severely.
It is my opinion that the term “ heat of passion ” was used in its exclusive sense solely to negative proof of intent to kill. So the phrase “without design to effect death” in the manslaughter statute is used in its exclusive sense. Surely it was never intended that in a manslaughter prosecution the People must prove affirmatively that the defendant did not intend to kill. Such a prosecution would be defeated by proof that the defendant did intend to kill. It has heretofore been my judgment that the People for the same reason were not required to prove affirmatively that the defendant acted in the “heat of passion.”
*102 B. Affirmative Proof of Heat of Passion
The uncertanty which resulted from earlier decisions (People v. Risico, 191 App. Div. 355; People v. Heineman, 211 N. Y. 475, supra) and from the statutory history of the homicide provisions has now been removed by People v. Peetz (7 N Y 2d 147, supra) and cases cited. The People are now required to prove affirmatively in a manslaughter prosecution both before the Grrand Jury and on the trial that the crime was committed in the heat of passion.
It is obvious that in some murder prosecutions where all degrees of homicide must be charged, the court may be required to charge “ heat of passion ’ ’ both exclusively and inclusively. The court may be required to charge the jury exclusively that “heat of passion” if found to exist may serve to disprove premeditation and deliberation and design to kill. In charging the crime of manslaughter, the court is required to charge inclusively that heat of passion must be established to find the defendant guilty under the appropriate statutory provision. In a manslaughter prosecution, of course, heat of passion need be charged only inclusively or affirmatively. But in every such prosecution for murder or manslaughter, it seems absolutely essential that the court charge manslaughter, second degree, under the omnibus provision of subdivision 3 of section 1052 of the Penal Law (People v. Mussenden, 308 N. Y. 558, 561-562).
C. Definition of “ Heat of Passion ”
Mention has been made of good definitions of “ heat of passion ” in the California cases cited (supra). “ Heat of Passion ” is generally the result of provocation although not necessarily so (People v. Nicoll, 3 A D 2d 64, 74, supra). Section 3 of the English Homicide Act of 1957 (detailed supra) is a good definition of provocation. The law of provocation is discussed in Corpus Juris Secundum (40 C. J. S., Homicide, §§ 46-54).
A charge of heat of passion, whether exclusively or inclusively must of course depend upon the facts of each case. Justice Bergan in People v. Lewis (282 App. Div. 267, 269, supra) recognized the exclusive nature of the provision: “ The words * * * do not necessarily require the manifestation of a violent rage. It is principally a state of mind in which there is an absence of design to cause death and an absence of a deliberate implementation of such a design. The words seem to us to be used in the sense of a sudden urge and in the sense of spontaneous action.” (Italics mine.)
*103 The classic definition of the term “ heat of passion ” is found in Johnson v. State (129 Wisc. 146, 160 [1906]., supra): “ We are constrained to approve the idea that the heat of passion which will reduce what would otherwise be murder to manslaughter * * # and which is specified inclusively or exclusively in the statutory definitions of other homicidal offenses, is such mental disturbance, caused by a reasonable, adequate provocation as would ordinarily so overcome and dominate or suspend the exercise of the judgment of an ordinary man, as to render his mind for the time being deaf to the voice of reason; make him incapable of forming and executing that distinct intent to take human life essential to murder * * * and to cause him, uncontrollably, to act from the impelling force of the disturbing cause, rather than from any real wickedness of heart or cruelty or recklessness of disposition.”
The foregoing is useful mainly as an “ exclusive ” definition.
An excellent inclusive or affirmative definition of ‘ ‘ heat of passion” for use in manslaughter cases is found in American Jurisprudence (26 Am. Jur., Homicide, § 44, p. 189): “ The passion which characterizes voluntary manslaughter does not consist in settled hatred or anything nearly akin thereto; on the contrary it must be of sudden development. Passion is not limited to rage, anger or resentment. It may be the emotion expressed by the terms ‘ fear ’, ‘ terror ’, or according to some decisions ‘ excitement ’ or ‘ nervousness This emotional state, however it may be expressed, must actually have dominated the slayer at the time of the homicidal act, and it must have been entertained toward the person slain, and not toward another.” A combination of these definitions to fit the facts of a given case would be adequate in law and equally important, understandable to a jury.
D. Proof of Heat of Passion by Circumstantial Evidence
Judge Burke in People v. Peetz (7 N Y 2d 147, 152, supra) states: ‘ ‘ Doubtless there are many occasions when heat of passion is displayed by signs of rage or outward show of violence but, primarily being a state of mind, the existence of uncontrollable passion must often rest upon inferences (see People v. Lewis, 282 App. Div. 267, 269-270).”
The recent case of People v. Eckert (2 N Y 2d 126, and cases cited therein) discusses the legal sufficiency of circumstantial evidence before a Grand Jury.
In the instant case, the Medical Examiner testified to the findings: “ Asphyxiation by aspiration of blood. Fractured nasal bones, multiple contusions about the face, lips and mouth. ’ ’
*104 Standing alone such evidence could justify the Grand Jury in inferring that the homicide was committed in the ‘ ‘ heat of passion. ’ ’
But in the instant case, the defendant Lumetta contends and with legal justification that he cannot be charged with the “ state of mind ” of his alleged accomplices. Unlike People v. Lieberman (3 N Y 2d 649) there was here no conspiracy or agreement in advance to commit an assault upon the deceased. Lieberman seems to hold that when a prior agreement to assault exists, a defendant party to the agreement but who does not participate in the assault is charged with the “ state of mind ” i.e., “heat of passion” of his accomplices. This despite the fact that there was no evidence that death is the planned result or the foreseeable result of the assault. It may be mentioned parenthetically that the ruling in Lieberman is consistent only on the theory that “ heat of passion ” is not an essential element to be affirmatively proved. Otherwise, a defendant under similar circumstances could be charged with the intent to kill of his accomplices. (People v. May, 9 A D 2d 508.)
Since there is no agreement or conspiracy established in the instant case, independent proof, direct or circumstantial, that Lumetta acted in the ‘ ‘ heat of passion ’ ’ is required. But as found in point I {supra) there is some testimony that Lumetta did himself participate in the assault. ‘ ‘ Heat of passion ’ ’ may be inferred under such circumstances from the nature of the wounds inflicted upon the deceased, i.e. from the circumstantial evidence.
III. Motion to Dismiss foe Illegality of Evidence
The'defendant Lumetta testified before the Grand Jury after executing a written waiver of his constitutional privilege. After giving his testimony, the District Attorney sought to impeach the credibility of his Grand Jury testimony by showing prior inconsistent statements taken in question and answer form in the District Attorney’s office.
A similar incident occurred in the Peetz case (7 N Y 2d 147, 151, supra). Judge Bubke commented that the impeaching writing was ‘ ‘ unsigned and unsworn ’ ’ and further that the People concede its illegality. But the witness in Peets was the People’s own witness. Such a witness may be impeached, if at all, only as permitted in section 8-a of the Code of Criminal Procedure by a prior inconsistent statement ‘1 by him subscribed or * * * made under oath.”
But a defendant testifying under a written waiver of his constitutional privilege is not a People’s witness. He may be *105 impeached before the Grand Jury in the same maimer as on the trial. The prior inconsistent statement need not be in writing; it need not be subscribed or under oath; it need not be offered in evidence or marked for identification.
But this is not to say that the practice is desirable. The impeaching statement and the contradictions therein contained are not evidence in chief. That is true equally of a People’s witness as well as a defendant witness. If not evidence in chief, it is not part of the People’s prima facie case. Since this rule of law is rarely explained to the Grand Jury, the better practice is not to impeach any witness. But if it be deemed desirable to show prior inconsistencies on the part of a defendant witness, such proof should always be accompanied by explicit instructions that the contradictory statements are not evidence in chief.
It should be noted however that the presentation of some illegal evidence to the Grand Jury does not warrant dismissal of the indictment provided a prima facie case is made out by the legal evidence presented. (People v. Rabinowitz, 301 N. Y. 763; People v. Smith, 258 App. Div. 800; see dissenting opinion of Bergan and Halpern, JJ., People v. Leary, 280 App. Div. 679, 681, followed by Court of Appeals, 305 N. Y. 793.)
IY. Motion to Dismiss Assault Counts
Included in the indictment are two assault counts charging assault in the second degree. The defendant Lumetta contends that as to him the credible testimony, at its worst, is that he struck the deceased with his fists.
Section 444 of the Code of Criminal Procedure provides that upon a trial for manslaughter ‘1 if the act complained of is not proven to be the cause of death, the defendant may be convicted of assault in any degree constituted by said act, and warranted by the evidence.”
There is evidence from which a trial jury could conclude that the blows were not the actual cause of death in view of the Medical Examiner’s report of “ Asphyxiation by aspiration of blood ’ ’. But it is difficult to conceive that the wounds inflicted were not the proximate producing cause of death. (People v. Kane, 213 N. Y. 260.) An excellent discussion of the doctrine and leading cases on proximate producing cause of death may be found in United States v. Hamilton (182 F. Supp. 548).
In the eventuality that such a fact question may be submitted to the jury, I would probably if no new evidence were presented, be required, as to defendant Lumetta, to present the charge to the jury as one of simple assault. But that is not to say that the *106 charge of felonious assault may not be inferred from the evidence before the Grand Jury.
All of the defendants have been granted inspection of the Grand Jury minutes. Only Lumetta thus far has moved to dismiss. I have written at some length largely for the guidance of all counsel. This decision may, if other counsel agree, serve as a disposition of all motions to dismiss. Appropriate orders may be submitted.
The motion to dismiss is in all respects denied. Despite such denial, I am indebted to defendant’s counsel, Joseph Lewis Simon, Esq., for a thorough and exhaustive memorandum of the facts and the law. Such high quality memoranda are of inestimable benefit to the court.