Edward T. Sullivan, J.
Defendant moves pretrial, April 8, 1971, in accordance with the condition imposed when the court granted his request at calendar call for the February 1971 *970 Criminal Term of Saratoga County Court that the ease he moved over the term for trial at the next Criminal Term scheduled for June 14, 1971. Indictment No. 1807-71 was found by the Grand Jury sitting in conjunction with the January 1971 Term of Supreme Court of the State of New York held in and for the County of Saratoga. It is a two-count indictment. The first count charges the defendant with the crime of criminally selling a dangerous drug in the third degree, in violation of section 220.35 of the Penal Law of the State of New York, a Class C felony, and alleges a sale in the City of Saratoga Springs, New York on or about October 28, 1970, knowingly and unlawfully, of an alleged narcotic drug, to wit: heroin. The second count accuses the defendant of the crime of criminal possession of a dangerous drug in the fourth degree, in violation of section 220.15 of the Penal Law of the State of New York, a Class D felony, and is based upon the same factual allegations as Count 1 above. Defendant has been at liberty on bail since shortly after his arrest, while the case has been pending;.
The motions brought by defendant are multi-purpose and seek numerous items of relief. The relief sought is as follows:
1. For an inspection of the Grand Jury minutes; in the alternative, a dismissal of the indictment because of an insufficiency of evidence before the Grand Jury.
2. In the nature of discovery and inspection, a copy of any report of any scientific analysis of the “ narcotic drug ”, alleged in said indictment.
3. Authority to inspect and have a scientific analysis of said “ narcotic drug ” on behalf of the defendant.
4. A bill of particulars.
At the oral argument of the motion on April 30, 1971, the prosecution consented to supply the defendant with a xerox or photocopy reproduction of the scientific analysis report obtained by the People which was presented to and received by the Grand Jury, pursuant to section 248 of the Code of Criminal Procedure, in partial support of said indictment No. 1807-71 found by it against the above defendant (Item 2). The particular sought in Item 4 was specified as a statement from the District Attorney setting forth the type of scientific analysis or the name or other identification of the exact examination employed at the New York State Police Science Laboratory to reach the conclusion set forth in thé aforesaid scientific report (Item 2). The People consented to supply the defendant with a statement identifying the exact examination used, and it was so ordered by the court at the oral argument.
*971 Defense counsel requested that, since he had been successful in obtaining the relief sought in Item 2 and Item 4, the request for an independent scientific analysis of the alleged drug by a representative of the defendant should be deferred, as it might well have become superfluous and could progress no further useful purpose. Belief Item No. 3 was therefore deferred.
The relief sought by the defendant in Item 1 (a), or, in the alternative, Item 1 (b), was vigorously opposed by the People on the oral argument, although no answering affidavit in opposition thereto was filed or served. The People did not seek a dismissal of this part of the motion brought by defendant, thereby conceding that there was sufficient foundation as a basis for the motion. The affidavit by the attorney for the defendant in support of this part of the motion is in the main based upon the testimony at the examination or preliminary hearing held before Hon. Richard F. Muelaney, Acting City Judge of the City of Saratoga Springs, N. Y. on December 14, 1970. The court on the motion was furnished with a complete transcript of the minutes of the aforesaid examination. It was supplied by the District Attorney with the consent of the attorney for the defendant. The court was also handed for the purposes of this part of the motion a complete transcript of the proceedings held before the Saratoga County Grand Jury on January 7, 1971. The minutes of the preliminary hearing were considered by the court only to determine if there was sufficient support therein to sustain the allegations contained in the affidavit of the attorney for the defendant on the insufficiency of the evidence before the Grand Jury, requiring the court to examine the Grand Jury minutes (People v. Howell, 3 A D 2d 153, 155-156, affd. 3 N Y 2d 672) by meeting the requirement that he show extrinsic proof that- there was such insufficiency or intrinsic proof that there is a reasonable possibility that the evidence presented was, in fact, deficient (People v. Jackson, 32 A D 2d 590) ; and to thus overcome the presumption that an indictment is based upon legal and sufficient evidence (People v. Randall, 9 N Y 2d 413, 424 ; People v. Glen, 173 N. Y. 395, 403). This court is of the opinion that the minutes of the testimony received at the examination, or preliminary hearing, sustain the main contentions set forth in the affidavit for the defendant upon which this part of the motion is based.
Both counts of the indictment are based upon the exchange of a glassine packet containing a white powder which moved from the defendant to an undercover special police officer, Daniel Jewett, Jr., employed by the Saratoga Springs City *972 Police Department; and a payment of $10 moving from Special Officer Jewett to the defendant. It is conceded that the white powder itself cannot be marked physically for identification. Special Officer Jewett admittedly did not mark the glassine packet. Shortly after the above exchange, Special Officer Jewett delivered the glassine packet to Lieut. John IJudson, Saratoga Springs City Police Department, who performed a narcotic field test for opiates on a small amount of the white powder from the glassine packet. Lieut. Hudson, admittedly, did not put identification marks on the glassine packet. Instead, Lieut. Hudson chose to handle identification by cutting down a celophane envelope to proper size and by placing within this celophane envelope the aforesaid glassine packet containing the white powder, together with a white slip of paper on which Lieut. Hudson had typewritten his name. According to the testimony, he closed the celophane envelope with three staples.
Lieut. Hudson had testified that he used a narcotic field kit containing a reagent, which he applied to the white powder and testified that he obtained a positive result. Thereafter he personally mailed the celophane envelope with its contents intact to the State Police Laboratory. Subsequently, in return, he received the report of the scientific analysis of the white powder (Item 2 requested relief above) and also received a celophane envelope containing the slip of paper with his name typed on it and also containing a glassine packet with a white powder substance therein. There were three staples in the celophane outer envelope and the glassine packet was now marked either in orange or red with the letters 1 ‘ AP ’ ’, the latter being, according to the testimony, the State Police Lab identification mark. At page 59 of the minutes of the examination held in City Court, Saratoga Springs, 1ST. Y., at line 18, Lieut. Hudson admitted that he could not testify under oath that the glassine packet which was returned to him was the same glassine packet that he sent to the State Police Laboratory.
Thus, it is the main thrust of the contention of the defendant by his defense attorney that the essential continuity of custody of the alleged narcotic substance, according to the testimony of the police officers themselves, has necessarily been broken by the failure to maintain the chain of identification. It is apparent, therefore, that there are reasonable factual grounds constituting a foundation for the part of the motion seeking to inspect the Grand Jury minutes; or, in the alternative, if an examination of said minutes by the court reveals an insufficiency of evidence before the Grand Jury to support the criminal charges found, to dismiss the indictment. Defendant further contends that with *973 the custodial chain thus broken by the impropriety of the method of identification selected by the police lieutenant the prosecution cannot prove a prima facie case beyond a reasonable doubt, that a trial would be futile, and would therefore be a waste of expense and time on the part of the prosecution, the defense, and the court itself.
The People contend that the custodial chain was not broken. Although Lieut. Hudson did not place an identifying mark on the glassine packet nor on the oelophane envelope, his testimony as to the physical acts he performed sufficiently sustain the continuity of identification.
Defendant also contends that the custodial chain was broken between Special Officer Jewett and Lieut. Hudson. He bases this contention upon a discrepancy in the testimony at the preliminary hearing as to which pocket of his shirt or jacket Special Officer Jewett placed the glassine packet after the alleged purchase and from which pocket of his shirt or jacket he removed a glassine packet for delivery to Lieut. Hudson.
The presentation of the defendant of this part of the motion was thus forceful and thought-provoking. The factual discrepancy or possible omissions in the chain of identification and custody mandated that the court in determining the motion should read and examine the Grand Jury minutes. This was done. As stated above with reference to relief Item 2, a verbatim copy of which has been ordered on consent to be supplied to the defendant, it was presented and received as evidence by the Grand Jury as permitted by section 248 of the Code of Criminal Procedure. I therefore find that any contention of an omission in the evidentiary chain or a break in the continuity of custody which may appear to be a logical deduction from an examination of the minutes of the preliminary hearing, are overcome by the introduction into evidence before the Grand Jury of the chemical analysis report as a statutory permissible exception to the hearsay rule. In passing it is noted that at a jury trial the prosecution will be faced with a greater burden of proof and will not be favored with any similar exception to the exclusionary rules under the present law of evidence.
It is the decision of the court that the defendant is not entitled to an examination of the Grand Jury minutes (Code Crim. Pro., § 251). Under this section the courts have held that unless the indictment was found upon illegal evidence, incompetent evidence or without evidence, the court must deny the motion. (People v. Glen, 173 N. Y. 395, 400, supra ; People v. Vaccarella, 257 App. Div. 461 ; People v. Bob, 233 App. Div. 94.) If there *974 is some evidence of each element of the crime, i.e., a prima facie case, the determination whether or not that evidence presented to the Grand Jury would warrant a conviction by a trial jury is to be made exclusively by the Grand Jury. (People v. Howell, 3 A D 2d 153, 161, note of Justice Breitel, affd. 3 N Y 2d 672.)
In People v. Eckert (2 N Y 2d 126, 129), the Court of Appeals said, ‘ ‘ That a trial jury might not convict on this evidence is not our concern. The Legislature has specifically relegated the question of whether a trial jury would return a conviction on this evidence to the judgment of the Grand Jury.” If sqme legal evidence of the elements of the crime is presented, as stated from the authorities above, ‘ ‘ the Grand Jury [is] the sole arbiter of the credibility of the witnesses and of the weight to be given to the evidence.” (People v. D’Andrea, 26 Misc 2d 95, 98, and cases cited.)
Applying the above statutory and decisional rules, and upon examining the Grand Jury minutes as aforesaid, I find that there was sufficient legal evidence presented to the Grand Jury for it to conclude that such evidence would, if unexplained or uncontradicted, warrant a conviction by a trial jury.
The motion by defendant to inspect the Grand Jury minutes is, therefore, denied, and the motion by defendant in the alternative that the indictment itself be dismissed on the grounds that there was insufficient evidence presented to the Grand Jury, is also denied.