Fuld, J.
The defendant, charged with killing his four-year-old foster son, Ronald, was indicted for first degree manslaughter. Convicted after trial of that crime in its second degree, he appealed to the Appellate Division and, following affirmance of the judgment, he was granted permission to appeal to this court.
An autopsy revealed 35 bruises on the child’s body inflicted within 24 hours of death and that he died of ‘' shock due to blood loss” resulting from a “tearing of the mesentery”.[1] The *386 medical testimony established that a blow or a kick to the stomach or back, or a push into a hard object, could have been the cause of death. Although, when first questioned by the authorities, the defendant denied all knowledge of how the boy had come by the fatal injury, he admitted, on being confronted with the autopsy findings, that he had struck and kicked the child. His account, given both orally and in writing to the district attorney and the police, indicates that on the morning of the death he and Ronald were alone in the house, that Ronald ‘ ‘ misbehaved ’ ’ and that he struck him ‘ ‘ with sufficient force to knock him off the toilet and onto the floor.” He then told the child, who evidently had been slow in getting dressed, to go into the bedroom to finish dressing and while there Ronald pulled some clothing off the dresser. What happened thereafter is best described by the defendant himself in his written statement: “I went into the bedroom and gave him a couple of cracks, then as he went to pick up the clothes again I pushed him away from me. He bounced off the bed and back towards me. With that I shoved him with my foot towards the bed and he struck the leg of the bed. Then I gave him his- clothes and told him to get dressed. ’ ’
The child was obviously hurt; the defendant noticed that he “ was unsteady on his feet, and looked real white ” and, after applying cold water to his head and face, he told the youngster to lie down. Unable, several hours later, to waken him, the defendant called a physician who pronounced him dead.
This story of adult rage exploding over the dawdling manner in which a four-year-old youngster dressed himself must have had a tremendous impact on the jury, and its effect must have been further heightened by the fact that it was told in the defendant’s own words. It is in the light of the forcefulness of the impression this story must have made on the jury that we examine the defendant’s principal argument for reversal, namely, that the trial judge committed prejudicial error in treating his statements as confessions.
To begin with, it appears that the trial judge avoided an express designation of the statements as confessions and referred to them throughout his charge as “ certain oral and written statements made by the defendant ”. Although he unnecessarily called attention to the rule that a confession is *387 admissible “unless made under the influence of fear produced by threats ”, or upon the district attorney’s stipulation not to prosecute, and, although he might have phrased this portion of the charge more felicitously, we believe it clear that the judge was speaking in the abstract and not of the statements given by the defendant.
However, even if the instruction were to be construed as an oblique characterization of the statements as confessions, that would not constitute prejudicial error. It is quite obvious that only an exceedingly fine line separated the defendant’s highly incriminating statements from a confession and that it was the powerful impress of the statements themselves rather than any possible inference the jury might have drawn by indirection from the court’s charge that determined the course of the verdict. In other words, since the defendant’s statements were thoroughly inculpatory, in no sense protestations or expressions of innocence, the court’s asserted description of them as confessions could not, in any event, have misled the jury or prejudiced the defendant.
Errors are almost inevitable in any trial, improprieties almost unavoidable, but the presence of one or the other furnishes no automatic signal for reversal and retrial. On review, the court’s inquiry must be directed toward determining whether the claimed defect influenced the jury and tainted its verdict. If the record demonstrates that it did not, then, the defendant is not entitled to a second trial. (Code Crim. Pro., § 542; see People v. Mleczko, 298 N. Y. 153, 162; People v. Buchalter, 289 N. Y. 181, 224-225, per Lehman, Ch. J.) While we are ever intent on safeguarding the rights of a defendant (see, e.g., People v. Jackson, 7 N Y 2d 142; People v. Carborano, 301 N. Y. 39; People v. Mleczko, 298 N. Y. 153, supra), we recognize at the same time that the State has its rights too. Where error has occurred, we must cast into the balance its interest as prosecutor and, if we find that there is no likelihood that the defendant’s rights were prejudiced, we write finis to the matter. We do not approve or condone the error, but merely acknowledge — as did the Supreme Court, through Mr. Justice Cakdozo, in Snyder v. Massachusetts (291 U. S. 97, 122) —that “ justice, though due to the accused, is due to the accuser also.”
*388 Concededly, as Wigmore has observed, “Exculpatory statements, denying guilt, cannot be confessions ”. (3 Wigmore, Evidence [3d ed., 1940], § 821, p. 240.) Where, therefore, a defendant makes a pretrial statement which is either exculpatory or, at least, consistent with innocence and such statement is introduced at trial and subsequently labeled a confession by the court, it is more than likely that the court’s action would prejudice the defendant in the eyes of the jury. Under such circumstances, the jurors’ initial comprehension of the defendant’s exculpatory statement, as well as their reaction to it, is liable to be materially altered to the defendant’s detriment by the court’s later allusion to it as a confession of guilt. The possibility of prejudice, however, varies with the degree to which the court’s description of the defendant’s statement departs from the fact. Therefore, where a defendant has made an inculpatory statement, especially where it is so incriminatory as itself to provide almost sufficient evidence to sustain a conviction, the court’s designation of it as a confession may be regarded as a mere technical misnomer. (See People v. Lewis, 282 App. Div. 267, 272; see, also, Commonwealth v. Biggs, 313 Pa. 457, 460.) Having heard the statement which virtually convicts the accused out of his own mouth, there is little chance that a subsequent technically erroneous reference to it as a confession can have a substantial effect on the jury’s verdict. The difference, after all, between a highly incriminating statement and a confession, although quite significant to a lawyer, is of slight consequence to a juror. “ Errors which loom large to a judge, learned in the law and trained to administer justice in strict accordance with the law, may be scarcely visible to the lay juror.” (People v. Buchalter, 289 N. Y. 181, 224-225, supra, per Lehman, Ch. J.)
In the case before us, the jury had heard the defendant’s own admission that he had struck his foster son “with sufficient force to knock him off the toilet and onto the floor ”, that he had thereafter given him “ a couple of cracks ”, that he had then “ pushed him ” with such force that “ he bounced off the bed ” and that, finally, he had kicked him so that he “ struck the leg of the bed.” Little, if anything, distinguishes the account which the defendant gave from a true confession, but whatever fine legal distinction may exist was, we may be well-nigh certain, *389 without any significance in the minds of the jurors under the circumstances of this case. Having heard the defendant’s own account of the beating he had administered and, having heard that the child died a short time later of internal bleeding, it is hardly conceivable that the jurors could have been adversely affected by the trial court’s characterization, if such it was, of the defendant’s statements as confessions. In short, where, as in the case before us, guilt was proved to' the hilt, and the assertedly erroneous instruction could not have influenced the result, it may not be said that the error was harmful or that any substantial right of the defendant was prejudiced.
The judgment should be affirmed.

. The mesentery is the tissue which provides the intestines with its blood supply.