OPINION OF THE COURT
Fuchsberg, J.
The question on this appeal is whether a defendant who, having been given the warnings required by Miranda v Arizona (384 US 436) and having elected to waive his right to silence, proceeds to narrate the essential facts of his involvement in the crime, may be cross-examined about his failure to inform the police at that time of exculpatory circumstances to which he later testifies at trial. We hold that, under the circumstances here, neither due process nor the privilge against self incrimination prohibits this manner of impeachment.
Defendant James Savage appeals from an order of the Appellate Division which affirmed a judgment entered upon a jury verdict convicting him of first degree assault. The conviction flowed from his shooting of one Robert Johnson in the course of an altercation outside the Central Bar on East 161st Street in The Bronx. At the trial several witnesses for the People, including Johnson, testified that Savage had drawn his gun and purposely shot Johnson. One of the prosecution’s witnesses, the arresting officer, testified that several weeks after the crime had been committed, when he apprehended *677 the defendant, immediately after the administration of the Miranda warnings, the defendant volunteered, first, "I’m glad I’m caught — I’m tired” and then went on to describe his role in the shooting, confessing that he had shot Johnson with a gun he possessed during an altercation outside the bar. Significantly, to the prosecutor’s additional inquiry, made without objection, as to whether the defendant had "indicate[d] anything further to you apart from what you’ve just started”, the officer's response was "no”.
Thereafter, during his own case, the defendant, choosing to take the stand, testified that he indeed had shot Johnson and then added by way of justification that the shooting had occurred during an altercation precipited when Johnson attempted to rob him. He also told the jury that the actual discharge of the gun was inadvertent. On cross-examination the prosecutor, in an obvious attempt to establish that the exculpatory material was a recent fabrication, essayed, and over objection was permitted, to put a short series of questions at the heart of which was the one that reads: "Now, when you saw Detective Creegan [following the arrest], before you saw your lawyer, when you saw the police officer, did you tell the police oficer that [Johnson] attempted to rob you?” The defendant’s response was that he had done so. As might be expected, during the course of his summation, the District Attorney, in arguing that the detective’s version of the post-Miranda statement was more credible, made the point that, if it was, the fact that the defendant had omitted any mention of the exculpatory circumstance at the time of his original statement militated against its truth. In our view, the prosecutor’s queries to the defendant were proper and, therefore, so were the comments made in closing argument.
It is by now well settled that the use of his postarrest silence against a defendant even for impeachment purposes may violate due process and the privilege against self incrimination. In Doyle v Ohio (426 US 610), fundamental fairness forebade a prosecutor to attempt to draw an adverse inference from the fact of a defendant’s silence at the time of arrest because the defendant’s receipt of the Miranda warnings had, in effect, conveyed the State’s assurance that, if he elected to remain silent, his silence would not be used against him (id., at pp 617, 619; see Jenkins v Anderson, 447 US 231, —, 48 USLW 4693, 4696). Having been told he need not speak about the facts of the case at that time, the State cannot renege on *678 its promise and use the silence to impeach him when he subsequently testifies at trial. Moreover, viewed against the obvious prejudice, the use of the silence a defendant maintained at a time when he was privileged to say nothing at all was recognized to be of dubious probative value because it cannot be determined whether, in fact, it was the existence of the privilege that induced the silence. (Doyle v Ohio, supra, at pp 617, 618; see People v Rutigliano, 261 NY 103, 107.)
However, as the Supreme Court has even more recently made clear, a defendant, who, in the face of Miranda warnings, decides not to exercise his privilege but instead chooses to speak to the police about the charges against him, enjoys no due process protection from such an inquiry (see Jenkins v Anderson, supra, at p —, 48 USLW, p 4696; Anderson v Charles, 447 US —, 48 USLW 3819). Rather, whether he may be impeached by the use of telling omissions from the tale he told is to be determined under State evidentiary law (Jenkins v Anderson, supra, at p —, p 4696; cf. People v Dawson, 50 NY2d 311, 321-322).
Against this backdrop, the case before us emerges as fundamentally different from Doyle (supra). For, the simple and undeniable fact is that the defendant here did not remain silent. In stark contrast to the circumstances in Doyle, where the defendants " 'did not speak about the facts of the case at the time’ ” when the silence there occurred (426 US, at p 619, as reiterated in Jenkins v Anderson, supra, at p —, p 4694), the most cursory examination of the record reveals that Savage, for all practical purposes, did just the opposite.
As already indicated, the direct testimony of the arresting officer established that Savage, without any overbearing of his will, responded to the opportunity to inform the officer of his involvement in the crime. Moreover, this he did in no conclusory form. A breakdown of his statement proves that he specifically stated that he possessed a pistol, that he used the weapon to shoot Robert Johnson, that the shooting occurred in the course of a dispute between him and Johnson, that the shooting took place in front of a bar and that the bar was located on 161st Street. Not only were these relevations incriminatory, they expressly incorporated essential elements of the crime with which he was to be charged. But excluded from all this was the crucial exculpatory circumstance to which the defendant later was to testify — that he had shot his *679 victim unintentionally while warding off the latter’s attempt to rob him.
Given defendant’s voluntarily rendered narrative of his part in the shooting, this omission speaks more eloquently than words. For, what was omitted is far from an inconsequential detail or a collateral matter, but a fact of such overwhelming significance that its absence from the narrative was at least as calculated to distort his recitation as a most affirmative falsehood. It put an entirely different cast on the event.
It is an elementary rule of evidence, and of common sense, in our State and almost every other jurisdiction, that, when given circumstances make it most unnatural to omit certain information from a statement, the fact of the omission is itself admissible for purposes of impeachment (3A Wigmore, Evidence [Chadbourn rev ed], § 1042; Richardson, Evidence [10th ed — Prince], § 222). This rule is firmly imbedded in behavioral expectations (cf. People v Dawson, supra).
Therefore, that the defendant decided not to offer the mitigating explanation for his conduct in amelioration of his role in the shooting he undertook to describe could challenge credulity. Having on his own ventured to communicate devastatingly incriminating information, his failure to then so much as mention the excuse he was later to put forth is well-nigh inexplicable except as a recent fabrication. Measured by the way in which almost any normal person would perceive it, the strongest considerations of self-interest would be expected to keep him from containing it within himself. In short, his conduct ran counter to human experience. And further confirmation of its significance comes from the setting in which the omission occurred: that moment of psychological truth when a defendant chooses to inculpate himself, "that moment [when] he will tell all, and tell it truly” (3 Wigmore, Evidence [Chadbourn rev ed], § 851, p 524).[1] Thus, the exclusion, however it might be weighed by the triers of the facts, was, to say the least, extraordinarily probative in enabling them to evaluate the reliability of the explanation when it surfaced for the first time at trial.
Moreover, reference to the omission, because of its negative nature, could not serve substantively as evidence in chief to *680 prove the commission of the crime. It did not lend itself to employment, whether by way of evidence or argument, as anything more than a device for impeachment (compare United States v Agee, 597 F2d 350, 354, 357, cert den 442 US 944, with id., at pp 365-368 [dissenting opn]).[2]
Such an analysis fully grants the respect to be accorded a defendant’s constitutional rights, whether in the exercise of his privilege against self incrimination or to the process that is his due. But, doing so, it also recognizes that the intent behind the privilege against self incrimination, exemplified by the supportive Miranda procedures it has spawned, is not to induce silence but only to insure that the choice to speak is free and uncompelled (see ALI, Model Code of Pre-Arraignment Procedure, pp 368-374). That it was so in the case before us now is unchallenged. There is not the slightest suggestion that government action, passive or active and whether via the Miranda warnings or otherwise, induced the omission. If anything, it can be said that the warnings provided him with a ready means by which to rationalize the omission at trial (see Doyle v Ohio, 426 US, at p 626 [Stevens, J., dissenting]).
In striking the balance these principles bespeak, the State is denied the right to draw adverse inferences from the fact that a defendant has maintained an effective silence, even if something less than total. However, as we have seen, constitutional standards do not inhibit every use of a defendant’s postarrest silence, but only those which are fundamentally unfair (Doyle v Ohio, supra, at pp 618, 619-620, and n 11; United States v Conlin, 551 F2d 534, cert den 434 US 831 [to rebut defendant’s claim that he told exculpatory version to police after his arrest]; cf. Jenkins v Anderson, 447 US 231, 245, —, 48 USLW 4693, 4696, 4698, n 1, supra [Marshall, J., dissenting, use of prearrest silence to impeach defendant’s credibility]; Roberts v United States, 445 US 552, 562-563 [Brennan, J., concurring, refusal of defendant to answer questions about coconspirators held to permit increased sentence]; United States v Trujillo, *681 578 F2d 285, 287-288 [postarrest silence may be pertinent to claim of insanity]).
Thus, as Doyle teaches, courts may not overlook the obvious fact that postarrest silence will often be (at p 617) "insolubly ambiguous” since it may be impossible to determine whether the defendant was motivated to remain silent in the exercise of his Fifth Amendment privilege or, for example, because he then possessed no acceptable explanation for the conduct for which he was in custody. But, in a case like the one before us today, where we deal with a defendant who did not stand mute, evenhanded logic dictates that time-tested evidentiary procedures for the ascertainment of truth not be ignored (Anderson v Charles, 447 US —, 48 USLW 3819, supra).[3]
Surely, that is true as to a defendant who, instead of invoking his right to silence, " 'chooses to speak in the unfettered exercise of his own will’ ” (Miranda v Arizona, 384 US 436, 460, supra) and, in so doing, speaks pertinently to the criminal accusation against him. When, as in the present case, the defendant, though alerted to his rights by the officer, is ready enough to make an almost cathartic confessional of both his relief at being apprehended and the role he played in the shooting itself, he manifests an unmistakable "decision to cast aside his cloak of silence” and thus should not now be permitted to forestall impeachment of his credibility with the cavalier claim that he did not so intend (Jenkins v Anderson, supra, at p —, p 4695).
That this case does not fit into the analytical mold of Doyle is also apparent from the fact that the dissenters must indulge in the utterly unwarranted presumption that the defendant, whom the Miranda warnings did not deter from revealing his leading part in the criminal transaction, suddenly thought the better of it and refused to say anything more in reliance on the privilege which until that instant he had completely ignored. Putting aside the fact that nothing in the record supports this tenuous assumption, as already indicated such *682 an approach must proceed on the peculiar premise that the defendant would unnaturally have halted his speech solely to withhold the one thing he normally would want to put up front, his exculpatory explanation.
This being so, it is noteworthy that other courts, interpreting Doyle in like circumstances, also have sanctioned the impeachment of a defendant’s credibility by confronting him with logically significant omissions from a postarrest statement (see, e.g., United States v Agee, 597 F2d 350, 354-357, supra; United States v Mireles, 570 F2d 1287, 1291-1293; Twyman v Oklahoma, 560 F2d 422, 424, cert den 434 US 1071; United States v Mitchell, 558 F2d 1332, 1334, 1335).
Most important, misapplication of the protective principles these cases indorse in the long run would but serve to undermine rather than advance the values protected by the privilege against self incrimination and those advanced by the requirement for due process. For nothing saps the strength of a legal precept more than when, as put into practice, it turns out to have an unanticipated, unrealistic and undesirable effect.
For all these reasons, the order of the Appellate Division should be affirmed.

. The weighty experiential support for this principle, Professor Wigmore has noted, has been recognized by masters of psychology as varied as Honoré Balzac and Daniel Webster (3 Wigmore, Evidence [Chadbourn rev ed], § 851, p 524, n 2).

. It is also worth mention that the prosecutor’s question in any event could have had no more than cumulative effect; the juxtaposition of the inclusion of the exculpatory matter in the defendant’s own testimony, on the one hand, and its absence from the officer’s recounting of his postarrest conversation with the defendant, on the other, could hardly have been lost on the jury. Moreover, defense counsel’s failure to object to the pertinent questions put to the officer as to the completeness of the post-Miranda statement only emphasizes that the contrast between the policeman’s version and that the defendant was to give was bound to introduce a full-blown impeachment issue even if the defendant had not been cross-examined at all.

. It goes without saying that, in such circumstances, the trial court, exercising its authority to supervise the cross-examination (see People v Ocasio, 47 NY2d 55, 60), may be expected to apply standards like those we enunciated in People v Dawson (50 NY2d 311, supra), adjusted of course, for the differences between a witness in the position of the one in that case and of a defendant in a case like the present one. Thus, for example, the court should, if requested, advise the jury that the defendant was under no legal obligation to have continued speaking, and should permit the defendant the opportunity to tender explanation for his omissions.