■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN A. WHALEN, Appellant. — Appeal from a judgment of the County Court of Albany County (Harris, J.), rendered January 6, 1981, upon a verdict convicting defendant of the crime of rape in the first degree. On the evening of July 4, 1979, at approximately 9:45 P.M., the female victim, aged 19, was walking up Baker Avenue in Cohoes, New York, en route to Cohoes Memorial Hospital. A man walked past her, turned and came up behind her, put his hands over her eyes and mouth and told her not to scream. He then dragged her off the shoulder of the road into some bushes, punched her a number of times, removed her clothing, and raped her. When the man left, she donned her clothing and ran to the emergency room at the hospital where she received medical attention for her injuries and notified police. She thereafter gave a detailed description of

her assailant to the police stating that he was a white male, age 20 to 25 years, about five feet nine inches tall, weighing 150 to 160 pounds, with shoulder length dirty blonde hair parted in the middle, wearing blue denim pants with a belt, a light pullover shirt, and sneakers. On September 25, 1979, she examined a series of six photographs at the Cohoes Police Department and quickly identified a photograph of defendant as the man who had raped her. Defendant was indicted on or about October 4, 1979, and his trial commenced December 8, 1980. He was positively identified in court by the victim as the man who raped her on July 4, 1979. His defense was mistaken identity and he contended, among other things, that at or around the time of the incident his hair was not even collar length. In addition, both defendant and his wife testified that he was at home the entire night the crime was committed. Rebuttal witnesses for the People contradicted this testimony. In seeking reversal on this appeal, defendant attacks the identification procedures employed by the police, the charge of the court to the jury, and the conduct of the prosecution during the trial and upon summation. The trial was not free from error, but the same may be said of most any trial. The appellate process is not a search for error, but a review of what transpired at trial to determine whether there were any improprieties which influenced the jury to the extent that the verdict was tainted and the defendant did not receive a fair trial (*People v Kingston*, 8 NY2d 384). With these considerations in mind, there must be an affirmance. The pretrial photographic identification procedures employed were not proved to be impermissibly suggestive. Moreover, the victim's in-court identification and testimony that she observed defendant "face-to-face" for three to five minutes, establish an independent source for the identification (*People v La Brake*, 51 AD2d 609). The charge of the jury on this issue was adequate (*People v Gardner*, 59 AD2d 913), as was the charge on the defense of alibi. The court properly and fairly marshaled the evidence and when the entire charge is read in context, it cannot be said to be unfair to defendant, since it covered all necessary elements to properly instruct the jury. As to the conduct of the prosecution, first, we find no error in the effort to impeach defendant by questioning him concerning his postarrest failure to tell the police of his alibi offered at trial. The circumstances here are somewhat unusual and, in our view, within the exception referred to in *People v Conyers* (52 NY2d 454, 459). Defendant, while in custody on another charge, told police he had been "up north" on July 4, 1979, contrary to his alibi testimony at trial. This information had not been furnished in pretrial discovery (CPL 240.20), and the trial court did not permit its use at trial for impeachment purposes. However, the People were allowed to question defendant as to whether he had told the police while in custody the alibi story offered at trial. The court also allowed testimony from an interrogating officer that defendant never told him he had been home with his wife on the evening of July 4, 1979. This, defendant argues, violates the prohibition against the use of his postarrest silence as evidence against him (*Doyle v Ohio*, 426 US 610; *People v Conyers,* 52 NY2d 454, *supra; People v Gilmore,* 76 AD2d 548). Again, this situation is distinguishable. First, defendant was not silent (see *People v Savage,* 50 NY2d 673, cert den 449 US 1016), and the rationale of the above decisions is inapplicable. Therefore, the purpose of the questioning was not to penalize defendant for exercising his constitutional right to remain silent. We are of the same view as to the cross-examination of defendant's wife concerning her pretrial failure to inform police of the alibi story. Here again, she had previously told the police a conflicting version of the alibi subsequently offered at trial. Moreover, the court followed the cautionary procedures suggested in *People v Dawson* (50 NY2d 311) and thereafter gave the necessary and proper limiting instruction

to the jury. While the comments of the prosecutor on summation regarding alibi witnesses were improper, as was his reference to defendant's request for counsel, in the context of the entire summation and in response to comments made by defense counsel we do not view the conduct of the prosecutor to have denied defendant his due process right to a fair trial (*People v Crimmins,* 36 NY2d 230, 237). Judgment affirmed. Mahoney, P. J., Sweeney, Kane, Casey and Weiss, JJ., concur.