[631 NYS2d 863]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
THOMAS SPINELLI, Appellant.

Second Department, September 15, 1995

### APPEARANCES OF COUNSEL

*Slotnick & Baker,* New York City *(Barry I. Slotnick, Mark M. Baker* and *Lori E. Mann* of counsel; *Kenneth R. Ashford* on the brief), for appellant.

*Richard A. Brown, District Attorney* of Queens County, Kew Gardens *(Tammy J. Smiley* and *Gary Fidel* of counsel), for respondent.

### OPINION OF THE COURT

Upon the court's own motion, its unpublished opinion and order in this case dated September 11, 1995 is recalled and vacated and the following is substituted therefor:

O'BRIEN, J. P.

The defendant testified at trial to certain exculpatory facts which he had omitted from his statements to the police at the scene of the crime. The issue presented on appeal is whether it was permissible for the prosecutor to argue in summation that such omissions rendered the defendant's testimony unworthy of belief. We conclude that, since the prosecutor failed to cross-examine the defendant about the omissions, his comments during summation upon the defendant's pretrial silence were unduly prejudicial and deprived him of a fair trial.

## I

The defendant was convicted of manslaughter in the second degree for the shooting death of his neighbor, Jerry Liebowitz,

on the street outside of the house where they both lived in Queens. When the police arrived at the scene, Liebowitz was lying half in and half out of his car, with a single gunshot wound to his chest. The defendant and a third man, Eddie Cintron, were nearby. Police Officer Rall asked the defendant what happened, and he replied "I shot him. I shot him". Officer Rall then asked the defendant where the gun was, and he said it was in his house. Accompanied by his partner, Officer Rall followed the defendant into the basement of the house where the defendant retrieved a gun from inside a dropped ceiling. It was established at the defendant's trial that the bullet which killed Liebowitz was fired from this gun. After he produced the gun, the defendant was informed that he was under arrest. He was placed in handcuffs and given *Miranda* warnings by Officer Rall. The defendant said he understood his rights and then, without any questioning by the police, stated "[a]nother man Eddie was involved. He had a gun and he ran and put it in the house".

Eddie Cintron, a prosecution witness, was employed by Liebowitz as a plumber's assistant. On the morning of the shooting, he went to Liebowitz' apartment since they planned to drive to work in Liebowitz' car. As Liebowitz was pulling his car out if its parking spot on the street, the defendant threw a bag of garbage at the windshield and attempted to drag Liebowitz out of the car. According to the owner of the house, there had been ongoing quarrels for several months between the defendant and Liebowitz about parking arrangements and about the disposal of garbage on the premises.

Cintron saw the defendant take a gun from his jacket pocket and shoot Liebowitz. Cintron ran into Liebowitz' apartment and retrieved a gun from the attic. He returned to Liebowitz' side, pointed the gun at the defendant and told him to get away. The defendant went inside his house. Cintron became afraid that he would be blamed for the shooting so he returned the gun to Liebowitz' apartment before the police arrived.

The defendant testified on his own behalf. He said that, after he threw the garbage bag at Liebowitz' car, he attempted to walk away but Liebowitz, who was behind the wheel of his car, "lunged" the car at him, hitting him twice. Then Liebowitz got out of the car with a gun in his hand and began to hit him with the gun. The defendant claimed that he had his hand on the gun and was pulling it out of Liebowitz'

hand when he heard a shot, and the gun accidentally fired. Liebowitz and Cintron hit and kicked him until Liebowitz noticed blood on himself and sat down on the running board of his car. The defendant picked up the gun, placed it on a door ledge in his basement to keep it away from his children and returned to Liebowitz. The defendant's testimony concerning his subsequent contact with the police and his statements to them was essentially the same as that of Officer Rall.

The prosecutor did not cross-examine the defendant about his failure to tell the police that the shooting was an accident or that he acted in self-defense. During his summation, the prosecutor repeatedly remarked on the defendant's failure to tell the police at the scene of the crime about his claims that the shooting was accidental or justified and suggested that the defendant's explanation of the shooting was unworthy of belief for that reason. The prosecutor stated, *inter alia,* that the only reasonable explanation for the defendant's failure to say anything about an accident or self-defense was "because it never happened that way". The defendant's objections to these comments were overruled, and his application for a mistrial on this ground was denied.

On appeal, the defendant contends, *inter alia,* that he was denied a fair trial by the prosecutor's impermissible use of his pretrial silence during the redirect examination of Officer Rall and during his summation. We agree with the defendant that the prosecutor's conduct was improper in both instances.

## II

Officer Rall testified on cross-examination that he did not recall any statements made by the defendant other than those he had previously testified to on direct examination. The prosecutor subsequently inquired, on redirect examination, "[s]o he [the defendant] never said to you anything about an accident or self-defense, did he?" This question was improper as the prosecutor was precluded from offering, as direct proof of the defendant's guilt, evidence of his pretrial silence with respect to the claims of accident and justification. Based on constitutional considerations, it has long been and continues to be the law in this State that a defendant's silence cannot be used by the People as a part of their direct case *(see, People v Basora,* 75 NY2d 992, 993; *People v De George,* 73 NY2d 614, 620; *see also, People v Conyers,* 49 NY2d 174, 177; *People v*

*Rutigliano,* 261 NY 103). Regardless of whether the defendant's omission of exculpatory facts from his statements to the police could be used to impeach his credibility once he testified, the People could not attempt to use those omissions as direct proof of his guilt.

Nevertheless, the prosecutor's improper inquiry does not require a reversal of the defendant's conviction *(see, e.g., People v Arce,* 42 NY2d 179, 187). The court sustained the defendant's objection, Officer Rall did not answer the question, and the jury was instructed that the question was "completely inappropriate" and that they were to disregard it.

### III

■ The defendant was deprived of a fair trial, however, by the prosecutor's summation in which he argued that the defendant should not be believed because he failed to tell the police that the shooting was accidental or justified. In reaching this conclusion, we do not adopt the defendant's broad contention that any attempt to impeach his credibility on this ground constituted an impermissible use of his pretrial silence, as cross-examination of the defendant regarding these omissions would have been proper. Our decision is based on the narrower ground that the summation comments were fundamentally unfair because the defendant was not confronted with his omissions and given an opportunity to explain them.

The defendant contends that he maintained an effective, albeit not total, pretrial silence when confronted by the police and, therefore, constitutional protections and State rules of evidence preclude the use of his silence for impeachment purposes. The general rule is that, when a defendant remains silent prior to and after his arrest, his pretrial silence may not be used for impeachment purposes when he takes the stand, absent unusual circumstances *(see, People v De George,* 73 NY2d 614, 618, *supra; People v Conyers,* 52 NY2d 454, 458). Evidence of a defendant's pretrial failure to speak when confronted by the police "may be attributable to a variety of innocent circumstances that are completely unrelated to the truth or falsity of his testimony" *(People v Conyers, supra,* at 458). Moreover, the use of a defendant's postarrest silence for impeachment purposes may violate due process and the privilege against self-incrimination, as it is fundamentally unfair to promise the defendant that his silence will not be used

against him and then attempt to draw an adverse inference from that silence (see, Doyle v Ohio, 426 US 610). Because jurors may draw an unwarranted inference of guilt from the defendant's prior silence, the probative value of such evidence is outweighed by its potential for prejudice, and the use of a defendant's prior silence for impeachment purposes generally cannot be justified (see, People v De George, supra, at 619; People v Conyers, supra, at 459).

Nevertheless, a different rule pertains when a defendant, instead of invoking his right to remain silent, chooses to speak to the police about the crime. When a defendant voluntarily speaks to the police, neither due process nor the privilege against self-incrimination prohibits cross-examination of the defendant about his failure to inform the police at that time of exculpatory circumstances to which he later testifies at trial (see, People v Savage, 50 NY2d 673, 680, cert denied 449 US 1016). In such circumstances, whether a defendant may be impeached on cross-examination by his pretrial silence is a matter of State evidentiary law as "[c]ommon law tradition-ally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted" (Jenkins v Anderson, 447 US 231, 239). The Court in People v Savage (supra) held that State rules of evidence do not preclude such cross-examina-tion. "It is an elementary rule of evidence, and of common sense, in our State and almost every other jurisdiction, that, when given circumstances make it most unnatural to omit certain information from a statement, the fact of the omission is itself admissible for purposes of impeachment * * * This rule is firmly imbedded in behavioral expectations" (People v Savage, supra, at 679).

As the defendant in the case at bar made voluntary state-ments to the police prior to his trial, the People were not precluded from impeaching his credibility by questioning him on cross-examination about his failure to come forward earlier with exculpatory facts (see, e.g., People v West, 212 AD2d 651 [if a defendant speaks to police officers and omits exculpatory information which he presents for the first time at trial, he may be impeached with the omission]; People v Harrison, 149 AD2d 434).

The defendant, without any overbearing of his will by the police, admitted that he shot Liebowitz, and he showed the police where he had hidden the gun. When placed under arrest, the defendant asked for time to wash up and requested

that the police handcuff him outside the view of his family. In addition, after receiving *Miranda* warnings, the defendant told the police that "Eddie" was involved and had a gun. Yet the defendant omitted facts that he later testified to at trial which were of great significance, i.e., that Liebowitz had the gun, that Liebowitz was the initial aggressor, and that the gun had fired accidentally. Such omissions were "extraordinarily probative" with respect to the jury's evaluation of his testimony *(People v Savage,* 50 NY2d 673, 679, *supra; see also, People v Smith,* 172 AD2d 277 [conspicuous absence of the defendant's exculpatory statements from those admissions he did make was significant and was admissible to impeach his credibility]).

In *People v Savage (supra),* the defendant admitted to the police that he shot the victim during an altercation outside a bar. However, he testified at trial that the altercation occurred when the victim attempted to rob him and that the shooting was inadvertent. The Court held that it was proper to cross-examine the defendant about these omissions. "Given defendant's voluntarily rendered narrative of his part in the shooting, this omission speaks more eloquently than words. For, what was omitted is far from an inconsequential detail or a collateral matter, but a fact of such overwhelming significance that its absence from the narrative was at least as calculated to distort his recitation as a most affirmative falsehood. It put an entirely different cast on the event" *(People v Savage, supra,* at 679).

We do not interpret the decision in *People v Savage (supra)* as requiring that the defendant provide a complete narrative of the crime before the prosecutor may be permitted to question him about any omissions. It is sufficient that the defendant voluntarily chose to speak to the police about the circumstance of the crime and that the omitted facts he testified to at trial were significant *(see, e.g., People v Durden,* 211 AD2d 568 [the defendant could be cross-examined about his failure to tell the police of his alleged role as a hero in the incidents which led to his arrest, as it was unusual to omit such details from the statements he freely gave to the police and prosecutor]; *People v Valenti,* 199 AD2d 617 [prosecutor properly inquired into the defendant's postarrest silence concerning the identity of the person he claimed was driving the vehicle because he insisted before and after arrest that he was not the driver]; *People v Smith, supra* [the defendant, in his previous statement to the police, did not tell them that he was

the victim of the crime and that he had wrested the gun from the complainant]).

We emphasize, however, that when the omission of exculpatory facts from a defendant's previous statements is used for impeachment purposes on cross-examination, certain protections come into play. The court is required, upon the defendant's request, to advise the jury that he was under no obligation to speak, and the defendant must be provided an opportunity to explain the omissions, either through his answers to the prosecutor's questions or through questioning by defense counsel on redirect examination (see, People v Savage, 50 NY2d, supra, at 681, n 3; see also, People v Dawson, 50 NY2d 311, 322). The opportunity to explain is no more than is required for any witness whose testimony is subject to impeachment as an inconsistent statement or as a recent fabrication (see generally, People v Melendez, 55 NY2d 445, 451). Once a defendant is properly cross-examined regarding omissions from his prior statements, the evidence of his failure to previously provide exculpatory information is before the jury, and the prosecutor can comment on it in summation (see, People v Savage, supra; People v Durden, supra; People v Smith, supra).

Accordingly, if the defendant in the case at bar had been cross-examined in the correct manner, i.e., after the required foundation had been laid (see, People v Savage, 50 NY2d, supra, at 681, n 3), the prosecutor could have commented during his summation on the omission of exculpatory facts from the defendant's pretrial statements to the police. However, the prosecutor did not cross-examine the defendant in this manner but, instead, attacked the defendant's credibility by referring to the omissions in his summation. We conclude that this method of impeaching the defendant's credibility was fundamentally unfair.

By waiting until summation, the People precluded the defendant from offering any explanation for his failure to tell the police the exculpatory facts which he testified to at trial. The defendant could have offered any number of reasons for his omissions, such as fear, confusion, shock, etc. (see, People v Conyers, 52 NY2d, supra, at 458), which would have been for the jury to accept or reject. Instead, the prosecutor, by suggesting that the only explanation for the defendant's silence was that he was lying, at a point in the trial when the defendant had no opportunity to respond, ensured that this evidence would have a disproportionate impact upon the jury's

deliberations. While a defendant's partial pretrial silence may be probative of guilt, its use for impeachment purposes must be scrupulously fair. We conclude that, under the circumstances of this case, the prosecutor's conduct was fundamentally unfair.

## IV

The defendant further contends that the People failed to prove his guilt beyond a reasonable doubt. Viewing the evidence in the light most favorable to the defendant *(see, People v Contes,* 60 NY2d 620), we conclude that it was legally sufficient to establish the defendant's guilt. Moreover, upon the exercise of our factual review power, we conclude that the verdict was not against the weight of the evidence *(see,* CPL 470.15 [5]).

## V

We note that the defendant was convicted of manslaughter in the second degree under the third count of the indictment charging manslaughter in the first degree. Because the defendant was convicted of a lesser included offense under the third count of the indictment, that count must be dismissed under the rule enunciated in *People v Beslanovics* (57 NY2d 726), without prejudice to the right of the People to re-present any appropriate charges arising thereunder to another Grand Jury.

JOY, KRAUSMAN and FLORIO, JJ., concur.

Ordered that the judgment is reversed, on the law, and as a matter of discretion in the interest of justice, and the third count of the indictment is dismissed, without prejudice to the right of the People to re-present any appropriate charges arising thereunder to another Grand Jury *(see, People v Beslanovics,* 57 NY2d 726); and it is further,

Ordered that upon service upon him of a copy of this decision and order, with notice of entry, the defendant, who was at liberty during the pendency of this appeal pursuant to a securing order issued pursuant to CPL 530.45, is directed to produce himself, forthwith, before the Supreme Court, Queens County, at which time that court shall issue a securing order pursuant to CPL 470.45, either releasing the defendant on his own recognizance or fixing bail or committing him to the custody of the New York City Department of Correctional Services pending resubmission of the case to the Grand Jury

and the Grand Jury's disposition thereof *(cf.,* CPL 210.45 [9]). Such securing order shall remain in effect until the first to occur of any of the following: (a) a statement to the court by the People that they do not intend to resubmit the case to a Grand Jury, (b) arraignment of the defendant upon an indictment filed as a result of resubmission of the case to a Grand Jury, (c) the filing with the court of a Grand Jury dismissal of the case following resubmission thereof, or (d) the expiration of a period of 45 days from the date of this decision and order, provided that such period may, for good cause shown, be extended by the Supreme Court, Queens County, to a designated subsequent date if such be necessary to accord the People a reasonable opportunity to resubmit the case to a Grand Jury.