■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HENRY TUCKER, Appellant. [929 NYS2d 631]—

The defendant's contention that he was deprived of a fair trial because the People were permitted to question him about his post-arrest silence, and to comment upon it in summation, is unpreserved for appellate review (*see* CPL 470.05 [2]). Nonetheless, upon the exercise of our interest of justice jurisdiction, we conclude that the People's use of the defendant's post-arrest silence was error requiring a new trial.

Upon the defendant's arrest in connection with a shooting incident, he was read his *Miranda* rights (*see Miranda v Arizona*, 384 US 436 [1966]), and asked whether he was willing to answer any questions. The defendant responded "no." When a police officer subsequently told the defendant that he would be charged with two counts of attempted murder, the defendant stated that he was present at the shooting, but did not shoot anyone. No further statements were made. At trial, the defendant testified in his defense, admitting that he had been present during the incident, and identifying the shooter as his friend "Mustafa." On cross-examination, the People asked the defendant multiple times whether he had told the police, after his arrest, that Mustafa was the shooter.

A defendant's post-arrest silence generally cannot be used for impeachment purposes (*see People v Conyers*, 52 NY2d 454 [1981]; *People v Fox*, 60 AD3d 966, 967 [2009]; *People v Mejia*, 256 AD2d 422 [1998]; *People v Blacks*, 221 AD2d 351 [1995]; *People v Spinelli*, 214 AD2d 135, 139 [1995]). It is "fundamentally unfair" to assure a defendant that his silence will not be used against him and then to use that silence to impeach his subsequent trial testimony (*People v Spinelli*, 214 AD2d at 139; *see Brecht v Abrahamson*, 507 US 619, 628 [1993]; *Doyle v Ohio*, 426 US 610 [1976]). Moreover, "an individual's pretrial failure to speak when confronted by law enforcement officials is of extremely limited probative worth" while "the risk of prejudice is substantial" (*People v Conyers*, 52 NY2d at 458, 459; *see People v Savage*, 50 NY2d 673, 677-678 [1980], *cert denied* 449 US 1016 [1980]; *People v Spinelli*, 214 AD2d at 139-140; *People v Haines*, 139 AD2d 591, 592 [1988]). This is because an

individual's silence may be attributable to "a variety of innocent circumstances that are completely unrelated to the truth or falsity of his testimony;" such as "his awareness that he is under no obligation to speak or . . . the natural caution that arises from his knowledge that anything he says might later be used against him at trial" (*People v Conyers*, 52 NY2d at 458).

While a defendant's credibility may be impeached with a significant omission when, instead of invoking his right to remain silent, he chooses to speak to the police about the crime (*see People v Savage*, 50 NY2d at 678-679; *People v Fox*, 60 AD3d at 967; *People v Prashad*, 46 AD3d 844 [2007]; *People v Blacks*, 221 AD2d 351 [1995]), here, as the People correctly concede, the defendant expressly invoked his right to remain silent. Nevertheless, the People contend that the defendant did not remain silent because, after he invoked his right to silence, the defendant denied culpability. Here, however, "[t]he defendant's mere denial of his involvement in the shooting was not tantamount to a waiver of the right to remain silent" that he had expressly invoked moments before (*People v Santiago*, 119 AD2d 775, 776 [1986]; *see People v Torres*, 111 AD2d 885, 886 [1985]; *cf. People v Savage*, 50 NY2d 673 [1980]). Indeed, as the Court of Appeals has acknowledged, "the State is denied the right to draw adverse inferences from the fact that a defendant has maintained an effective silence, *even if something less than total*" (*People v Savage*, 50 NY2d at 680 [emphasis added]; *see People v Santiago*, 119 AD2d 775 [1986]).

Unlike our dissenting colleague, we find this case to be squarely controlled by this Court's decisions in *People v Santiago* (119 AD2d 775 [1986]) and *People v Torres* (111 AD2d 885 [1985]), and not by the Court of Appeals decision in *People v Savage*, which presented different circumstances. In *Savage,* the defendant, upon his apprehension by the police and the administration of *Miranda* warnings, "volunteered, first, 'I'm glad I'm caught—I'm tired' and then went on to describe his role in the shooting" (*People v Savage*, 50 NY2d at 677). Specifically pointing out that the defendant had "responded to the opportunity to inform the officer of his involvement in the crime" in an "almost cathartic confessional," and did so "in no conclusory form," the Court of Appeals concluded: "the simple and undeniable fact is that the defendant here did not remain silent" (*id.* at 678, 681).

In contrast, in *Santiago,* the defendant spoke to the police upon his arrest merely to deny his involvement in the shooting, and in *Torres,* the defendant spoke to the arresting officer, denying his guilt and stating that he knew that one of the complain-

ants had recognized him (*see People v Santiago*, 119 AD2d at 776; *People v Torres*, 111 AD2d at 886). In both cases, this Court determined that the defendants' statements were not "tantamount to the waiver of [the] right to remain silent so as to render the *Conyers* proscription [against use of post-arrest silence for impeachment purposes] inapplicable" (*People v Santiago*, 119 AD2d at 776; *People v Torres*, 111 AD2d at 886). Rather, this Court concluded that the defendants had maintained an "effective silence, even if something less than total" (*People v Santiago*, 119 AD2d at 776 [emphasis omitted], quoting *People v Savage*, 50 NY2d at 680; *see People v Torres*, 111 AD2d at 886).

Here, as in *Santiago* and *Torres*, and unlike *Savage*, upon his arrest and the administration of *Miranda* warnings, the defendant did not express his desire or willingness to speak to the police. When asked whether he would do so, the defendant responded "no." Nor did he inculpate himself in the shooting or narrate the circumstances of the shooting to the police. He merely denied his role in the incident (although admitting his presence) in a general manner. In other words, despite his conclusory denial of involvement in the crime, the defendant maintained an effective silence. Moreover, having deliberately availed himself of his right to remain silent, the defendant's failure to give a more complete exculpatory statement to the police "may simply [have been] attributable to his awareness that he [was] under no obligation to speak" to the police, including to implicate his friend in a shooting, and to his knowledge that his decision not to speak would not be used against him at trial (*People v Conyers*, 52 NY2d at 458). Thus, the defendant's omission was of minimal probative value (*id.* at 459).

Furthermore, the dissent correctly observes that a defendant may not use his *Miranda* rights as a "shield against contradiction of his untruths" and, therefore, a defendant who provides testimony at trial that is inconsistent with a pretrial statement may be impeached with that statement, even where it was taken in violation of *Miranda* (*Harris v New York*, 401 US 222, 224, 225-226 [1971], *affg* 25 NY2d 175 [1969]; *see People v Maerling*, 64 NY2d 134, 140 [1984]). However, this rule and its underlying rationale are inapplicable here because the defendant did not provide testimony at trial that was inconsistent with his pretrial statement (*cf. Harris v New York*, 401 US at 225; *People v Wise*, 46 NY2d 321, 324-325 [1978] [defendant who testified that he was not present when another individual shot the victim was permissibly impeached by pretrial statement that the gun "went off accidentally"]). Here, the defendant's direct testimony

to the effect that he was present at the shooting, but that it was Mustafa, rather than him, who was the shooter, was perfectly consistent with his pretrial statement that he was present at the shooting but was not the shooter. The People impeached the defendant not with an inconsistent statement, but, rather, with his failure to speak, to tell the police that Mustafa was the shooter, i.e., with his post-arrest silence. Thus, the present case does not fall under the purview of *Harris*, but, instead, under that of *Conyers*, which concerns the use of post-arrest silence and prohibits the People from using such silence for impeachment purposes (*see People v Conyers*, 52 NY2d at 457, 459; *see e.g. People v Prashad*, 46 AD3d 844 [2007]), except under circumstances akin to those present in *Savage*, which do not exist here.

Accordingly, the People should not have been permitted to question the defendant about his post-arrest silence. Under the circumstances, we cannot conclude that this error was harmless. The only evidence presented by the People to prove that the defendant was the shooter was the in-court identification of the defendant by two brothers and their friend, who did not know the defendant, and a grainy surveillance video and still pictures taken from the video, from which the face of the shooter could not be clearly discerned. Further, the defendant testified at trial, and identified himself on the video as an individual who fought with one of the eyewitnesses. In addition to the lack of overwhelming evidence of the defendant's guilt, there was a reasonable possibility that the error affected the verdict (*see generally People v Crimmins*, 36 NY2d 230, 237 [1975]). Indeed, the Court of Appeals has recognized that "evidence of a defendant's pretrial silence may have a disproportionate impact upon the minds of the jurors" (*People v Conyers*, 52 NY2d at 459; *see People v Livingston*, 128 AD2d 645, 646 [1987]). Further, the error in cross-examination was compounded by the prosecutor's repeated reference to the defendant's post-arrest silence during summation, including her statement that "an innocent person when they're arrested for a crime they didn't commit and they know who did it will say [who] did it."

Under these circumstances, we conclude that a new trial is warranted.

In light of our determination, we do not reach the defendant's remaining contention. Skelos, Sgroi, and Miller, JJ., concur.

Rivera, J.P., dissents and votes to affirm the judgment, with the following memorandum: On the instant appeal, the defendant contends that he was deprived of a fair trial because the prosecutor cross-examined him and commented during summa-

tion on his "post-arrest silence." He further argues that he was deprived of the effective assistance of counsel. For the reasons that follow, I would affirm the judgment of conviction.

### 1. Factual Background

This case involves the shooting of two individuals, Stanley McKinnon and Asim Nelson. A few hours after the shooting, the defendant was arrested and advised of his rights pursuant to *Miranda v Arizona* (384 US 436 [1966]). Although the defendant initially indicated that he did not wish to make a statement to the police, he then asserted, "I was there, but I didn't shoot anybody." After a hearing, the Supreme Court suppressed the defendant's statement.

At a jury trial, the two shooting victims and an eyewitness, Raheem Ward, made in-court identifications of the defendant as the shooter, who was wearing a black hooded sweatshirt, black pants, and black shoes. Additionally, the jury was presented with video footage depicting the shooting, still images of the video, and the defendant's post-arrest photograph. The victims and Ward were able to identify many of the participants in the altercation depicted in the video, except for one man, who was dressed in a white long-sleeved t-shirt and a "do-rag."

The defendant testified on his own behalf. During direct examination, the defendant stated, in relevant part, that he was the man dressed in white. He denied shooting McKinnon and Nelson. Notably, he testified that the shooter was the man dressed in "black," and that the shooter was named "Mustafa." On cross-examination, the defendant was questioned by the People, in pertinent part, as follows:

"Q. Did you tell the police it was Mustafa who did the shooting?

"A. I told the police. They asked me did you shoot him. I told the police[,] I was there but I didn't shoot nobody.

"Q. But you didn't tell them it was Mustafa; right?

"A. They asked me. They asked me—

"THE COURT: Answer the question.

"Q. Did you tell them it was Mustafa?

"THE COURT: Answer that question.

"A. No."

During summation, the prosecutor commented that an in-

nocent person would have named Mustafa as the shooter, and implied that the defendant tailored his testimony that he was the man dressed in white after listening to the testimony of the victims and Ward at trial. In effect, the defendant's exculpatory testimony that Mustafa, not the defendant, was the shooter, was challenged by the People as a recent fabrication.

The jury convicted the defendant of two counts of attempted murder in the second degree, and attempted robbery in the first degree.

## 2. Legal Analysis

Initially, the defendant's contentions that he was deprived of a fair trial when the prosecutor questioned him regarding his failure to provide police officers with certain exculpatory information at the time of the arrest and commented on this failure during summation are unpreserved for appellate review (*see* CPL 470.05 [2]; *People v Fox*, 60 AD3d 966, 967; *People v Beauliere*, 36 AD3d 623 [2007]; *People v Materon*, 276 AD2d 718, 719 [2000]). Moreover, under the circumstances of this case, I would decline to review these contentions in the exercise of this Court's interest of justice jurisdiction (*see* CPL 470.15 [6]; *People v Robinson*, 82 AD3d 1269, 1270 [2011], *lv denied* 17 NY3d 800 [2011]). However, to the extent that the majority has addressed those contentions, I will now respond to them.

Respectfully, contrary to the majority's determination, the defendant was not impermissibly cross-examined by the People regarding his purported post-arrest silence. I disagree with the majority's statement that the defendant maintained an "effective silence." I also differ with the majority's conclusion that "the defendant's failure to give a more complete exculpatory statement to the police . . . was of minimal probative value."

Instead, as will now be discussed, this case is controlled by the holding in the Court of Appeals' decision in *People v Savage* (50 NY2d 673 [1980], *cert denied* 449 US 1016 [1980]). In *Savage*, the Court of Appeals held that neither due process nor the privilege against self-incrimination prohibits the impeachment of the defendant with regard to his failure to inform the police of certain exculpatory circumstances to which he later testifies at trial. Specifically, the Court of Appeals stated, "a defendant, who, in the face of *Miranda* warnings, decides not to exercise his privilege but instead chooses to speak to the police about the charges against him, enjoys no due process protection from such an inquiry" (*id.* at 678). Where, as here, a defendant speaks to the police and omits exculpatory information which he presents for the first time at trial, the defendant's credibility may

properly be impeached with that omission (*see People v Maerling*, 64 NY2d 134, 140 [1984]; *People v Savage*, 50 NY2d at 676; *People v Prashad*, 46 AD3d 844 [2007]; *People v Blacks*, 221 AD2d 351 [1995]; *People v Spinelli*, 214 AD2d 135, 139-141 [1995]; *People v Valenti*, 199 AD2d 617, 618 [1993]; *People v Padron*, 134 AD2d 625, 625-626 [1987]). A defendant is not required to provide a complete narrative of the crime before the prosecutor may be permitted to question him about any omissions (*see People v Spinelli*, 214 AD2d at 141). "It is sufficient that the defendant voluntarily chose to speak to the police about the circumstance of the crime and that the omitted facts he testified to at trial were significant" (*id.*).

Furthermore, although the defendant's statement was not admissible as evidence in chief because it was suppressed by the Supreme Court, it was properly used for impeachment purposes (*see People v Maerling*, 64 NY2d at 140; *People v Wise*, 46 NY2d 321, 324 [1978]; *People v Harris*, 25 NY2d 175, 177 [1969], *affd* 401 US 222 [1971]; *People v Blacks*, 221 AD2d at 351). The defendant testified during direct examination, inter alia, that he was present at the shooting; that he was the man dressed in white; and that Mustafa, who was dressed in black, was the shooter. Those statements were all "volunteered" by the defendant as part of his direct case. Essentially, the defendant argues that, by asserting his *Miranda* rights and prevailing at the suppression hearing, he was insulated from cross-examination and impeachment with regard to the previously omitted exculpatory evidence. The defendant cannot be permitted to use the *Miranda* shield as a sword. He opened the door by testifying during direct examination that Mustafa was the shooter (*see generally People v McCall*, 75 AD3d 999, 1001 [2010]) and, in effect, divested himself of the protection afforded him by the favorable suppression ruling. Stated another way, "reference to the omission, because of its negative nature, could not serve substantively as evidence in chief to prove the commission of the crime. It did not lend itself to employment, whether by way of evidence or argument, as anything more than a device for impeachment" (*People v Savage*, 50 NY2d at 679-680). Herein, the defendant was "alerted to his rights . . . [and] manifest[ed] an unmistakable 'decision to cast aside his cloak of silence' and [he] should not now be permitted to forestall impeachment of his credibility with the cavalier claim that he did not so intend" (*id.* at 681, quoting *Jenkins v Anderson*, 447 US 231, 238 [1980]), especially where the testimony sought to be impeached relates to the ultimate issue in the case, namely, the perpetrator's identity.

To the extent that the defendant asserts that the People

improperly commented on summation that the defendant omitted from his statement to the police that "Mustafa" was the shooter and tailored his testimony to conform to the People's proof, those contentions are also unpreserved for appellate review (*see* CPL 470.05 [2]). While the People's remarks were improper and should not be countenanced, contrary to the majority's determination, reversal is not warranted herein. The subject remarks were " 'not so flagrant or pervasive as to deny the defendant a fair trial' " (*People v Rayford*, 80 AD3d 780, 781 [2011], quoting *People v Almonte*, 23 AD3d 392, 394 [2005]). As stated by the Court of Appeals, "[r]eversal is an ill-suited remedy for prosecutorial misconduct; it does not affect the prosecutor directly, but rather imposes upon society the cost of retrying an individual who was fairly convicted" (*People v Galloway*, 54 NY2d 396, 401 [1981] [internal quotation marks omitted]).

The evidence of the defendant's guilt, without reference to the errors, was overwhelming, and there is no reasonable possibility that the errors might have contributed to the defendant's conviction. As noted above, McKinnon, Nelson, and Ward unequivocally identified the defendant in court as the shooter. McKinnon was face-to-face with the defendant; Nelson observed the defendant from six feet away; and Ward, who was standing near McKinnon, also observed the defendant with the gun. In addition, the jury had before it the video, the still images of the video, and the photograph of the defendant. Thus, the errors were harmless beyond a reasonable doubt (*see People v Crimmins*, 36 NY2d at 237).

The defendant was not deprived of the effective assistance of counsel, as defense counsel provided meaningful representation (*see People v Henry*, 95 NY2d 563, 565 [2000]; *People v Benevento*, 91 NY2d 708, 712-714 [1998]; *People v Baldi*, 54 NY2d 137, 147 [1981]). Viewed as a whole, defense counsel's efforts reflect " 'a reasonable and legitimate strategy under the circumstances and evidence presented' " (*People v Tonge*, 93 NY2d 838, 840 [1999], quoting *People v Benevento*, 91 NY2d at 713).

In sum, "[e]rrors are almost inevitable in any trial, improprieties almost unavoidable, but the presence of one or the other furnishes no automatic signal for reversal and retrial" (*People v Kingston*, 8 NY2d 384, 387 [1960]). Under the circumstances of this case, the defendant was not deprived of a fair trial nor was any substantial right prejudiced. Accordingly, I would affirm the judgment.