People v Horton (2018 NY Slip Op 04040)





People v Horton


2018 NY Slip Op 04040


Decided on June 7, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 7, 2018

108677

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
JEFFREY L. HORTON, Appellant.

Calendar Date: May 1, 2018

Before: Garry, P.J., McCarthy, Devine, Aarons and Pritzker, JJ.


Danielle Neroni Reilly, Albany, for appellant.
Matthew VanHouten, District Attorney, Ithaca (Andrew J. Bonavia of counsel), for respondent.


Pritzker, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the Supreme Court (Cassidy, J.), rendered July 22, 2016 in Tompkins County, upon a verdict convicting defendant of the crimes of burglary in the first degree, burglary in the second degree, rape in the first degree, criminal sexual act in the first degree, aggravated sexual abuse in the third degree, sexual abuse in the first degree, assault in the third degree, unlawful imprisonment in the second degree, stalking in the third degree, stalking in the fourth degree and menacing in the third degree.
Defendant was charged in a 15-count indictment with various crimes allegedly committed against his ex-girlfriend. Following a jury trial, he was found guilty of 11 counts: burglary in the first degree, burglary in the second degree, rape in the first
degree, criminal sexual act in the first degree, aggravated sexual abuse in the third degree, sexual abuse in the first degree, assault in the third degree, unlawful imprisonment in the second degree, stalking in the third degree, stalking in the fourth degree and menacing in the third degree. County Court sentenced him to an aggregate prison term of 12 years, followed by five years of postrelease supervision. Defendant appeals.
Defendant contends that his convictions are against the weight of the evidence. Here, the victim, defendant and another witness all testified regarding the days leading up to the attack when defendant repeatedly and incessantly contacted the victim, after he ended their relationship, by way of phone calls, text messages and appearing at the victim's house and her place of work either unannounced or expressly uninvited. The victim testified regarding the night of the attack [*2]when she woke up to defendant standing in her bedroom, frustrated that she was ignoring his calls, and threatening to kill her if she tried to leave. The victim testified that, although defendant had a key to her house, he relinquished that key by throwing it at her and, after defendant ended their relationship, she repeatedly instructed him to leave her alone and not come to her home. Notably, defendant conceded at trial that he was not given any express permission to enter the victim's home on the night in question. The victim then testified regarding vaginal and anal sexual intercourse, that defendant penetrated her vaginally with a vibrator and that defendant performed oral sex on her, all acts to which defendant admitted. However, the victim testified explicitly that there was nothing consensual about any of this sexual contact; her testimony that she was forcibly bound, beaten and actively resisted was corroborated by photographs and testimony by law enforcement, as well as medical professionals. The victim also testified to being pinned down and informed at least once not to try and escape. The victim also testified regarding physical injuries inflicted on her by defendant, and which defendant readily admitted to having inflicted, including bruises, swelling and what was ultimately diagnosed as postconcussion syndrome that kept the victim out of work for over a month.
While there were certainly differences between the victim's and defendant's versions of events, their conflicting testimony "presented a classic he-said she-said credibility determination for the jury to resolve" (People v Kiah, 156 AD3d 1054, 1056 [2017] [internal quotation marks and citation omitted], lvs denied 31 NY3d 981, 984 [2018]; see People v Brabham, 126 AD3d 1040, 1043 [2015], lvs denied 25 NY3d 1160, 1171 [2015]). "Viewing the evidence in a neutral light and according deference to the jury's credibility assessments, the verdict is supported by the weight of the evidence as to all of the charged crimes" (People v Brabham, 126 AD3d at 1043 [citations omitted]; see People v McCann, 126 AD3d 1031, 1033 [2015], lv denied 25 NY3d 1167 [2015]).
Defendant also contends that he was deprived of a fair trial due to the denial of four of his challenges for cause based on preexisting relationships between the prospective jurors and witnesses (see CPL 270.20 [1] [b], [c]). Turning first to defendant's contention regarding prospective juror No. 4 from round three, she indicated that she knew Ruth Crepet, a physician that the People intended to call as a witness, as Crepet was her primary care physician of 15 years. Although the juror stated that she had a preconceived notion that Crepet would be truthful, she indicated that she could be impartial and fair at trial in that regard. This juror also stated that her husband was the victim of a robbery and, because the person "got off," she was "a little cynical" about the criminal justice system, but "would try" to be impartial and thought "that [she] could be." When asked if she could find defendant guilty, this juror stated "yes, you bet." Defendant challenged this juror for cause on the foregoing grounds, but Supreme Court determined that she had sufficiently rehabilitated herself, and defendant utilized a peremptory challenge to exclude her.
While it is not necessarily an issue that Crepet was the prospective juror's doctor (see People v Stanford, 130 AD3d 1306, 1309 [2015], lv denied 26 NY3d 1043 [2015]), her general equivocality is problematic. "Equivocal, uncertain responses, including statements that a prospective juror will 'try' or 'hope' to be impartial, are insufficient in the absence of [other] 'express and unequivocal' declarations that the juror will put any preconceptions aside and render an impartial verdict based solely on the evidence" (People v Burdo, 256 AD2d 737, 740 [1998]; see People v Garcia, 125 AD3d 882, 883-884 [2015]). Here, while some of the prospective juror's responses were unequivocal, many were not, and, as such, her responses as a whole do not demonstrate that her opinion would not influence her verdict (see People v Hutthinson, 150 AD3d 887, 887-666 [2017]). Therefore, further inquiry was needed and, in the absence of said [*3]inquiry, it was error for Supreme Court to deny defendant's challenge for cause (see People v Alvarez, 130 AD3d 1054, 1055 [2015]; People v Burdo, 256 AD2d at 740; compare People v Vargas, 155 AD3d 1530, 1531 [2017]; lv denied 30 NY3d 1121 [2018]). Because the defense exhausted its allotment of peremptory challenges prior to the completion of jury selection, the judgment of conviction must be reversed (see People v Alvarez, 130 AD3d at 1055).
While this determination renders defendant's remaining arguments academic, as the matter is returning to Supreme Court for a new trial, we briefly address two arguments. First, we agree with defendant that the People's use of defendant's pretrial selective silence was improper (see People v Williams, 25 NY3d 185, 188 [2015]; compare People v Savage, 50 NY2d 673, 677-678 [1980], cert denied 449 US 1016 [1980]; People v Rothschild, 35 NY2d 355, 360-361 [1974]). We also agree with defendant that portions of testimony by Crepet and Jeremiah Allen were too detailed to fall within the prompt outcry hearsay exception and, as such, constituted impermissible bolstering (see People v Green, 108 AD3d 782, 784 [2013], lv denied 21 NY3d 1074 [2013]; compare People v Gross, 26 NY3d 689, 694-695 [2016]; People v Manning, 81 AD3d 1181, 1184 [2011], lv denied 18 NY3d 959 [2012]).
Garry, P.J., McCarthy, Devine and Aarons, JJ., concur.
ORDERED that the judgment is reversed, on the law, and matter remitted to the Supreme Court for a new trial.